**Paul R. HAYES, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 90–1306.**

United States Court of Veterans Appeals.

Argued Jan. 29, 1993.

Decided April 28, 1993.

Keith D. Snyder, Washington, DC, for appellant.

Pamela L. Wood, Deputy Asst. Gen. Counsel. with whom James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, and John D. McNamee, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and KRAMER * and FARLEY, Associate Judges.

* Subsequent to oral argument, Judge Kramer recused himself and did not take part in the decision.

FARLEY, Associate Judge:

Appellant, Paul R. Hayes, appeals a November 26, 1991, decision of the Board of Veterans' Appeals (BVA or Board) which denied service connection for post-traumatic stress disorder (PTSD) and a panic disorder. The Court has jurisdiction of the case pursuant to 38 U.S.C.A. § 7252(a) (West 1991). The BVA rendered its decision on the following grounds: (1) that the evidence of record did not objectively support the diagnosis of PTSD; (2) that no independent evidence was shown to corroborate the veteran's claimed stressors during service; (3) that, although the veteran had a few panic attacks during service, the symptoms and frequency did not meet the diagnostic criteria for panic disorder and the veteran had had similar attacks prior to service; and (4) that appellant's current chronic psychiatric disorder, panic disorder, was first manifested many years after service and is not related to service. Because we find that the Board applied the proper statutory and regulatory standards and that the findings of fact made by the Board are "plausible," the BVA decision will be AFFIRMED.

## I. Background

Appellant had active service in the United States Army from April 1968 to November 1969, including a tour of duty in Vietnam from November 1968 to November 1969. He was assigned to the 497th Engineering Company where his job specialty was plumber. Appellant's service medical records (SMRs) indicate that he was treated for anxiety-related symptoms in June 1968, before his tour of duty in Vietnam. These symptoms included passing out, seizures followed by combative behavior, cramping of the stomach, tightness in the chest, paresthesia of the fingers, and anxious hyperventilation. A neurology clinic report listed appellant's symptoms as dizziness, becoming sweaty, and losing consciousness; according to the report, appellant claimed that he had experienced these latter symptoms on several occasions since age seventeen and that anger and anxiety had preceded each of the episodes. The examining physician's impression was vasodepression syncope for which he prescribed Librium. (Vasodepression is defined as a "decrease in vascular resistance with hypotension," see DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1809 (27th ed. 1988) [hereinafter DORLAND'S]. Syncope is defined as "a temporary suspension of consciousness due to generalized cerebral ischemia; a faint or swoon." See DORLAND'S, at 1628.) The SMRs indicate that in December 1968 and January 1969, during his period of service in Vietnam, appellant was treated for dizzy spells, headaches, and hyperventilation, which were apparently related to tension and anxiety. He was prescribed Librium and Dramamine to treat these symptoms.

In a statement dated December 21, 1986, Mr. Charles G. Bearce, A.C.S.W., a private social worker, noted that he had been counseling appellant since March 13, 1986, and discussed at length the stressors alleged by appellant. According to Mr. Bearce, appellant reported that, prior to being assigned to the Vietnam theatre, he had been promised "duty in school" where he would be taught to read and write and that during his service in Vietnam, he experienced conflict with other soldiers and alienation from his family due to his illiteracy. Mr. Bearce also noted that appellant reported feeling a great deal of anxiety around rocket attacks, and that since returning from Vietnam appellant had suffered two to three years of nightmares which had stabilized until 1979, when appellant's current psychiatric disorders began to slowly develop. Mr. Bearce concluded that appellant's present psychiatric disorders, which he diagnosed as including anxiety, depression, and agoraphobia, were clearly connected to his experiences in Vietnam and the stress from exposure to war trauma which was exacerbated by his illiteracy problems and social isolation.

In March 1987, appellant filed a claim with the Veterans' Administration (now Department of Veterans Affairs) (VA) for service connection for PTSD and hearing loss. (Appellant's hearing loss claim is not before this Court.) He reported various events as stressors related to his service in Vietnam. Appellant noted that, because he was illiterate, he was unable to communi-

cate with his family and was subjected to teasing from his fellow servicemen, resulting in loneliness and alienation. Appellant also contended that he had witnessed rocket attacks, nightly fire fights, and mass burials of dead Vietnamese by bulldozers. Appellant stated that he had witnessed the deaths of several friends during the rocket attacks, including Joseph Murphy. As a result of the stressors related to his service in Vietnam, he claimed to be currently experiencing recurring nightmares, shaking, cold sweats, pounding heartbeat, a fear of travelling or being enclosed, and frequent panic attacks. In support of his claim, appellant submitted various statements from friends and family who described changes in appellant's condition since returning from Vietnam, including nervousness, frequent crying, nausea, and fear of travelling outside the home.

In March 1987, the VA furnished information regarding appellant's claimed stressors to the United States Army and Joint Services Environmental Support Group (ESG) and requested that the ESG attempt to verify the stressors in connection with appellant's claim for service connection for PTSD. In June 1987, appellant was examined by a VA fee-based psychiatrist, Dr. Patricia Lillquist. After noting the stressors and symptoms provided in appellant's own account of his history, Dr. Lillquist diagnosed appellant as having two distinct psychiatric disabilities: PTSD and panic disorder.

In a letter dated September 1987, the ESG responded to the VA's request for information regarding appellant's claim and enclosed extracts of the activity reports of the 35th Engineer Group and the 87th Engineer Battalion describing the 497th Engineer Company's operations during appellant's period of Vietnam service. These extracts did reveal that a diver support group of the 497th Engineering Company recovered three bodies from the Rach Thi Tinh River on July 9, 1969, but did not corroborate whether appellant took part in this operation. The ESG noted that it was unable to locate information confirming the stressors claimed by appellant.

In a decision dated March 1988, the VA Regional Office (RO) deferred rating appellant's claim. The RO noted that appellant claimed that he was involved in a rocket attack, during which several of his fellow servicemen were killed, including his buddy Joseph Murphy, and required further corroboration of appellant's alleged stressors pursuant to VA ADJUDICATION MANUAL M21-1 (MANUAL M21-1), paragraph 50.-45(e). In a letter dated June 20, 1988, the ESG confirmed that a serviceman, Joseph T. Murphy, was killed on May 4, 1969; however, the ESG could not confirm that appellant was in Mr. Murphy's unit or that appellant witnessed Mr. Murphy's death. The ESG noted that the information provided was general in nature due to the lack of specific information or specific stress indicators provided by appellant. The ESG stated that more detailed information was needed in order to provide any further research into appellant's claim, including a brief description of the specific combat incidents, including dates, places and types, and the full names of friends in appellant's unit, killed or missing in action.

In a decision dated October 4, 1988, the RO denied service connection for PTSD. In adjudicating the claim, the RO relied on the SMRs, the December 1986 statement from Mr. Bearce, the statements from appellant's friends and family, a personal statement by appellant dated October 1986, the letter from the ESG dated June 1968, and the psychiatric report by Dr. Lillquist dated June 1987. After discussing all of the evidence, the RO noted that although a diagnosis of PTSD was provided, there was no evidence of a specific objective stressor which would warrant entitlement to service connection for PTSD. The RO also stated that the death of a serviceman known to appellant was not sufficient corroborative evidence of a stressor. Finally, the RO noted that there was no evidence of a panic disorder in appellant's SMRs.

On November 23, 1988, appellant filed a Notice of Disagreement. A Statement of the Case was provided to appellant in December 1988. In February 1989, appellant filed a VA Form 1-9 (APPEAL TO BOARD OF VETERANS); on the form, appellant ex-

pressed his disagreement with the RO's finding that there was no objective evidence of stressors which caused his PTSD. Appellant noted that he was treated for anxiety while in Vietnam and submitted duplicate copies of his SMRs to support this statement. Appellant also stated that he was involved in an operation to remove dead bodies from the Rach Thi Tinh River and that the documentation provided by the ESG corroborated this fact. In a decision dated March 1989, the RO confirmed the previous rating decision; as a basis for its decision, the RO found that there was no evidence presented to corroborate appellant's claimed stressors during service in Vietnam.

On March 16, 1989, appellant was provided with a Supplemental Statement of the Case (SSOC). Thereafter, appellant submitted a letter, dated April 1989, from Denise Eno, a literacy volunteer who had been tutoring appellant. Ms. Eno noted that appellant was still illiterate and that he was having difficulty learning due to his present anxiety state which she related to his experiences in Vietnam. Appellant also submitted a personal statement (transcribed by Ms. Eno) which reiterated his Vietnam experiences and his current anxiety symptoms. In May 1989, the RO confirmed the previous rating decision. Another SSOC was provided to appellant in May 1989.

In a July 1990 decision, the BVA denied service connection for PTSD. In the "ITEMS RELATING TO PRESENT APPELLATE STATUS" section of its decision, the Board noted that it was limiting its consideration and decision to the issue of service connection for PTSD as the issue of service connection for panic disorder had not been developed for appellate review. Appellant appealed the Board's decision to this Court. By order dated September 5, 1991, this Court vacated the Board's July 1990 decision and remanded the case to the Board; on remand, the Board was directed to address the matters of service connection for both PTSD and a panic disorder, to provide reasons or bases for its conclusions, and to discuss any relationship which might exist between the two psychiatric disorders.

*Hayes v. Derwinski,* 3 Vet.App. 7 (1991) (single judge order).

On remand, the VA referred appellant's claim to Eugene M. Caffey, Jr., M.D., a VA Medical Advisor. Dr. Caffey was asked to give his opinion on, inter alia, whether appellant had a chronic psychiatric disorder during service and, if so, whether such disorder preexisted service and was aggravated during service. In his response dated October 1991, Dr. Caffey noted that appellant's SMRs did not support a conclusion that a chronic psychiatric disorder was shown during service. Dr. Caffey found that appellant had symptoms typical of "panic attacks," which began at age seventeen (prior to service) and that appellant had a tendency to react to life stress with panicky manifestations. Based on the infrequency of the episodes, Dr. Caffey opined that appellant's symptoms during service did not satisfy the criteria for panic disorder. Dr. Caffey also determined that the diagnosis of PTSD was not well supported, noting that the expected specificity of the relationship between past events and current intrusive thoughts was not well demonstrated and that appellant's reported stress events were not the type generally associated with PTSD. Dr. Caffey concluded that appellant currently had panic disorder with agoraphobia, which began to manifest in the form of excessive anxiety and fear of travelling in 1979, without particular reference to appellant's experiences in Vietnam. He also noted that it was correct to discern that this panic disorder represented the return of panic attacks experienced during his period of service in Vietnam since the panic pattern can be recurrent.

Appellant, in turn, submitted another letter from his social worker, Mr. Bearce, dated November 6, 1991. Mr. Bearce noted that he continued to see appellant on a weekly basis in individual and group therapy for the treatment of panic disorder and PTSD, and reiterated appellant's claimed stressors and symptoms. Appellant also submitted a psychiatric evaluation prepared by Julia M. Soler, M.D., dated November 1, 1991, who reviewed the evidence

of record in light of the standard diagnostic criteria found in the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM–III–R) published by the American Psychiatric Association and concluded that the diagnosis of the VA fee-based psychiatrist, Dr. Lillquist, that appellant had both PTSD and panic disorder, was well supported by the record.

In a decision dated November 26, 1991, the Board denied appellant's claims for entitlement to service connection for PTSD and for panic disorder. *Paul R. Hayes*, BVA ____ (Nov. 26, 1991). A timely appeal to this Court followed. The case was argued before this Court on January 29, 1993.

## II. Analysis

### A. Duty to Assist

At the outset of its decision, the BVA found that appellant's claims for service connection for PTSD and a panic disorder were well grounded, triggering the VA's duty to assist appellant in developing his claims, and that "this duty ha[d] been substantially fulfilled." *Hayes*, BVA ____, at 4; *see* 38 U.S.C.A. § 5107(a) (West 1991). After careful examination of the evidence of record, this Court is convinced that the VA adequately fulfilled its duty to assist appellant in developing his claims for service connection for both PTSD and a panic disorder.

▆▆▆ In order for service connection to be granted, the facts of the case must establish that a particular injury or disease was incurred or aggravated during service. 38 U.S.C.A. §§ 1131, 1154(b) (West 1991); 38 C.F.R. § 3.303(a) (1992). In determining whether an injury or disease was incurred or aggravated in service, the governing statutory and regulatory law requires the RO to evaluate the evidence in support of the claim based on the places, types, and circumstances of service, as shown by service records, the official history of each organization in which the veteran served, the veteran's medical records, and all pertinent medical and lay evidence. 38 U.S.C.A. § 1154(b); 38 C.F.R. §§ 3.303(a), 3.304 (1992). Even where there is a lack of official records to corroborate that an injury or disease was incurred or aggravated during service (including a period of combat), the Secretary of Veterans Affairs (Secretary) is required to accept as sufficient proof of service connection satisfactory lay or other evidence that an injury or disease was incurred or aggravated during such period of service, if the evidence is consistent with the circumstances, conditions, or hardships of such service. 38 U.S.C.A. § 1154(b); 38 C.F.R. § 3.304(d).

With respect to the evidence needed to establish service connection for PTSD, VA's MANUAL M21–1 sets forth procedures that VA should undertake uniformly in evaluating such claims. Prior to March 26, 1991, MANUAL M21–1 directed the RO, under all circumstances, to require supportive evidence of stressors in the veteran's service records; a history of a stressor as related by the veteran was insufficient to establish service connection for PTSD. MANUAL M21–1, para. 50.45(e). Subparagraph (e) of paragraph 50.45 was subsequently changed, on March 26, 1991, to remove the requirement that a veteran provide evidence of stressors if the veteran could establish that he or she was "engaged in combat with the enemy." Under the amended paragraph 50.45(e), if the evidence showed the veteran was engaged in combat with the enemy and the claimed stressor was related to combat, no further development was necessary; however, if the claimed stressor was not combat related, the veteran was required to provide reasonable supportive evidence of stressors during service to support his claim.

Since the appeal of this case to this Court, paragraph 50.45 of MANUAL M21–1 has been rescinded and replaced by paragraph 7.46 of a new Part VI; the new manual provision retains the requirement for supportive evidence of stressors during service if the claim is not combat related:

e. **Reasonably Supportive Evidence of Stressors in Service.** Any evidence available from the service department indicating that the veteran served in the area in which the stressful event is alleged to have occurred and any evidence supporting the description of the event

are to be made part of the record. If the claimed stressor is related to combat, in the absence of information to the contrary, receipt of the Purple Heart, Combat Infantryman Badge, Bronze Star, and other similar citations is considered supportive evidence of participation in a stressful episode. Other supportive evidence includes, but is not limited to, plane crash, ship sinking, explosion, rape or assault, duty on a burn ward or in graves registration unit. POW status is conclusive evidence of an inservice stressor.

f. **Development for PTSD.** If the evidence shows the veteran engaged in combat with the enemy and the claimed stressor is related to combat, no further development for evidence of a stressor is necessary. See subparagraph e above. If the claimed stressor is not combat related, a history of a stressor as related by the veteran is, in itself, insufficient. Service records must support the assertion that the veteran was subjected to a stressor of sufficient gravity to evoke the symptoms in almost anyone. The existence of a recognizable stressor or accumulation of stressors must be supported. It is important the stressor be described as to its nature, severity and date of outcome.

MANUAL M21–1, Part VI, para. 7.46(e), (f) (September 21, 1992). This new provision became effective after the date on which the veteran filed his appeal with this Court. In *Karnas v. Derwinski,* 1 Vet.App. 308, 313 (1991), this Court held:

> [W]here the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable° to appellant should and . . . will apply unless Congress provided otherwise or permitted the Secretary of Veterans Affairs . . . to do otherwise and the Secretary did so.

This Court also has held that "[s]ubstantive rules, those which have the force of law and narrowly limit administrative action, in the VA Adjudication Procedure Manual are the equivalent of Department Regulations" and that "[u]nder *Karnas,* the Court is

required to apply the change to [the] substantive rule to the appellant's claim. . . ." *Hamilton v. Derwinski,* 2 Vet.App. 671, 675 (1992) (citing *Fugere v. Derwinski,* 1 Vet.App. 103, 107 (1990)). Due to a VA General Counsel Opinion of March 17, 1992, O.G.C. Prec. 07–92, which found the manual provision to be a substantive provision, the VA has issued a proposed rule which would convert paragraph 7.46 of MANUAL M21–1 from a manual provision to a regulation. 57 Fed.Reg. 34536, 34537 (1992), *amended* 57 Fed.Reg. 38095 (1992). Based on *Karnas* and *Hamilton* and VA's proposed rule, the Court finds that MANUAL M21–1, paragraph 7.46, is applicable to the instant appeal.

■ Although appellant's appeal was filed with this Court after MANUAL M21–1, paragraph 7.46, went into effect, the Court's review of the BVA decision reveals that the BVA satisfactorily complied with the new requirements. In its decision the BVA noted in pertinent part:

> While serving in Vietnam, the veteran was assigned to a construction engineering company (port construction), as opposed to a combat engineering company. He did not have a combat military occupational specialty, and his medals and decorations do not include any that are generally awarded in recognition of significant combat participation or acts of valor. While these facts do not preclude the presence of post-traumatic stress disorder of service origin, they are for consideration along with the other evidence of record. . . .

*Hayes,* BVA ____, at 6. As neither appellant's military specialty nor his service records indicates that he was "engaged in combat with the enemy" or that his duties involved more than the ordinary stressful environment experienced by all those who served in Vietnam, the Court finds that it was reasonable for the BVA to require some corroboration of the stressors claimed by appellant in support of his claims for service connection for PTSD. *See Wood v. Derwinski,* 1 Vet.App. 190, 192–93 (1991), *reconsidered,* 1 Vet.App. 406

(1991). *See also Wilson v. Derwinski,* 2 Vet.App. 614, 618 (1992).

■ The record reveals that the VA has made several attempts to obtain all evidence in support of appellant's claims for service connection for both PTSD and a panic disorder. The record includes, inter alia, appellant's SMRs, personal statements by appellant, statements by appellant's family and friends, records of private medical examinations, reports of VA physical and psychiatric examinations, statements from appellant's private social worker, a statement from a private psychiatrist, a statement from a literacy volunteer, and an evaluation by a Board medical advisor. In addition, after obtaining preliminary information from appellant regarding his alleged stressors during service in Vietnam, the RO provided such information to the ESG on at least two occasions in order to verify the stressors. Although the ESG was unable to corroborate appellant's alleged stressors after attempting twice to do so, the record reveals that appellant failed to provide the specific information requested by the ESG to complete its inquiry. Upon review of the record, the Court finds that appellant was adequately notified of the additional information required for a successful search for the necessary evidence, i.e., the specific combat incidents, including dates, places, and types, and the names of friends in his unit killed or wounded in action, including their full names. The record reveals that appellant provided only limited information to the ESG; he did not provide the dates and places of most of the alleged stressors and did not provide the names of fellow servicemen who could corroborate his allegations.

■ The question of whether or not the VA has fulfilled its duty to assist will not be judged in a vacuum; in deciding the issue, this Court will focus on several factors, including the VA's access to the necessary information and the attempts made by the VA to obtain relevant information, as well as the cooperation of the veteran in providing information within his control. As this Court noted in *Wood, supra:*

The duty to assist is not always a one-way street. If a veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence.

1 Vet.App. at 193. Based on our review of the record and in consideration of (1) the information at the VA's disposal, (2) the VA's attempts to obtain all necessary information, and (3) the limited information provided to the VA by appellant, we find that the VA satisfactorily fulfilled its duty to assist appellant in developing his claims for service connection for both PTSD and a panic disorder.

### B. Service Connection for PTSD and for a **Panic** Disorder

■ In order for a veteran to be entitled to receive compensation for PTSD or a panic disorder, it must have been incurred in or aggravated by military service. · 38 U.S.C.A. § 1131. The determination of whether a disability was incurred in or aggravated by service is a question of fact. *Mense v. Derwinski,* 1 Vet.App. 354, 356 (1991). The function of this Court in reviewing findings of fact by the BVA is limited to deciding whether or not such factual decisions constituted clear error. *Wood,* 1 Vet.App. at 192; *Gilbert v. Derwinski,* 1 Vet.App. 49, 52–53 (1990); *Sanders v. Derwinski,* 1 Vet.App. 88 (1990). "In practical terms, under the 'clearly erroneous' rule, this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, we cannot overturn them." *Gilbert,* 1 Vet.App. at 53.

■ In determining that service connection for PTSD is not warranted, the Board considered and weighed all of the evidence and then noted in pertinent part:

In summary, we conclude that the evidence does not support a reliable diagnosis of PTSD. For the reasons explained above, we find the evidence of a stressor to be tenuous; more importantly, the evi-

dence of symptoms satisfying the diagnostic criteria is weak, at best. The preponderance of the evidence, which includes the veteran's own statement of April 1989 articulating his symptoms, their onset and their progression, is against the claim of service connection for PTSD. Although PTSD and panic disorder are separate disorders that can exist simultaneously in an individual, the weight of the evidence shows that the veteran has the latter but not the former. We reach this conclusion while acknowledging the dual diagnoses made by the VA and private psychiatrists. However, in keeping with the analysis and discussion above, we find that the opinion of the Board Medical Advisor, who reviewed the entire record, is more consistent with the facts and the diagnostic criteria stated in *DSM–III–R.* Accordingly, service connection for PTSD is not warranted.

*Hayes,* BVA ____, at 12 (underscoring in original). In determining that panic disorder was not incurred in or aggravated by service and that service connection is not warranted, the Board considered and weighed all the evidence of record and noted in pertinent part:

> To summarize, although there is evidence of preservice episodes that likely constituted panic attacks (as distinguished from panic disorder), the evidence does not show a chronic psychiatric disorder prior to service. Based on a comparison of the service medical record entries with the diagnostic criteria for panic disorder, both of which are reported in detail above, the symptoms in service also did not reflect a chronic psychiatric disorder including panic disorder. While it can not [sic] be shown with precision when the veteran actually developed panic disorder, the evidence clearly indicates that it was not during service or for several years thereafter. The evidence overwhelmingly shows that the few episodes of panic symptoms noted in service subsided, that they do not meet the criteria for a diagnosis of panic disorder under *DSM–III–R,* and that, in spite of any nervousness or nightmares the veteran

may have experienced shortly after discharge, chronic symptoms of panic disorder did not develop until about 10 years after service. . . .

*Id.* at 18–19 (underscoring in original). Based on the evidence of record, we find the BVA's decision denying entitlement to service connection for both PTSD and a panic disorder to be plausible. *See Wood, supra; Gilbert, supra. See also Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1991); *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990).

 Appellant has asserted that the Board erred in failing to accept the VA fee-based psychiatrist's judgment as to the presence of symptoms of PTSD and in failing to accept the evidence of stressors which he proffered in support of his claim. Contrary to appellant's contentions, while the Board is not free to ignore a VA physician's opinion regarding service connection or an appellant's allegation of stressors related to PTSD, the Board is not required to accept a VA examining physician's opinion, a private physician's opinion, a social worker's opinion, or the opinions or contentions offered by any other source for that matter. *See Wood,* 1 Vet.App. at 192–93; *see also Wilson,* 2 Vet.App. at 618. It is the responsibility of the BVA, not this Court, to assess the credibility and weight to be given to the evidence. *Wood,* 1 Vet. App. at 192–93; *Sanden v. Derwinski,* 2 Vet.App. 97, 100 (1992). Such assessments by the BVA will be overturned by this Court only if they are "clearly erroneous." *Wood,* 1 Vet.App. at 192–93; *Sanden,* 2 Vet.App. at 101; *Gilbert* at 52. "Of course, if the BVA decision fails to give sufficient 'reasons or bases' for accepting or rejecting critical evidence, expert or otherwise, then a remand for further proceedings may be appropriate." *Wood, supra. See also Gilbert* at 55–59.

 Further, and again contrary to appellant's contentions, the Board did not err in not according appellant the "benefit of the doubt" with respect to his claims for service connection for PTSD and a panic disorder. A veteran is entitled to the "benefit of the doubt" when there is an approxi-

**70**

mate balance of positive and negative evidence regarding the merits of an issue material to the determination of a matter. *See* 38 U.S.C.A. § 5107(b) (West 1991); *Gilbert*, 1 Vet.App. at 53–55. If a fair preponderance of the evidence supports a veteran's claim, the claim will be granted and the rule has no application. *Gilbert*, 1 Vet. App. at 55. Similarly, if a fair preponderance of the evidence is against a veteran's claim, the claim will be denied, and the rule has no application. *Id.* Where the Board makes a finding of fact adverse to a claimant, it has necessarily concluded that the fact is established by a fair preponderance of the evidence.

> Where findings of material fact by the Board are properly supported and reasoned, and the Board concludes that a fair preponderance of the evidence weighs against the claim of the veteran, it would not be error for the Board to deny the veteran the benefit of the doubt. Such a denial would not be subject to reversal under § [7261(a)(3)(A)] as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" because it was premised upon a rational basis and supported by appropriate and relevant factors which were properly articulated.

*Id.* at 58.

■ Because there is a plausible basis in the record for the Board's determinations here that the preponderance of the evidence was against appellant's claims for service connection for both PTSD and a panic disorder and because the Board provided adequate reasons or bases, these determinations are not clearly erroneous. For this reason, we are unable to say that the Board's conclusions that appellant was not entitled to the benefit of the doubt on the issues of service connection for PTSD and a panic disorder were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C.A. § 7261(a)(3)(A) (West 1991). *See also Gilbert*, 1 Vet.App. at 56; *Cartright v. Derwinski*, 2 Vet.App. 24, 26 (1991).

### III. Conclusion

The BVA's decision serves as a model for how facts should be evaluated and weighed and for how the reasons or bases for such factual determinations should be articulated. Because the BVA decision with respect to the issues of service connection for both PTSD and a panic disorder is "plausible," it cannot be overturned. Accordingly, the Court holds that the BVA's November 26, 1991, decision is AFFIRMED.