Citation Nr: 1550130 
Decision Date: 11/30/15 Archive Date: 12/04/15

DOCKET NO. 13-09 374 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Boston, Massachusetts


THE ISSUE

Entitlement to service connection for bilateral hearing loss.


REPRESENTATION

Appellant represented by: Massachusetts Department of Veterans Services


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

A. Solomon, Associate Counsel


INTRODUCTION

The Veteran served on active duty from May 1961 to March 1965.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2012 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Boston, Massachusetts. 

A hearing was held on February 4, 2014, by means of video conferencing equipment with the appellant in Boston, Massachusetts, before Kathleen K. Gallagher, a Veterans Law Judge, sitting in Washington, DC, who was designated by the Chairman to conduct the hearing pursuant to 38 U.S.C.A. § 7107(c), (e)(2) and who is rendering the determination in this case. A transcript of the hearing testimony is in the claims file.

In a March 2015 decision, the Board granted the Veteran's claim for entitlement to service connection for tinnitus. The Board additionally remanded the appeal of the denial of an award of to service connection for bilateral hearing loss for further development. That development was completed, and the case was returned to the Board for appellate review.


FINDING OF FACT

The Veteran's bilateral hearing loss disability did not arise during or within one year of active military service and was not caused by his in-service excessive noise exposure.


CONCLUSION OF LAW

The criteria for service connection for bilateral hearing loss have not been met. 38 U.S.C.A. § 1101, 1110, 1112, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.307, 3.309, 3.385 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

Upon receipt of a substantially complete application for benefits, VA must notify the claimant what information or evidence is needed in order to substantiate the claim and it must assist the claimant by making reasonable efforts to get the evidence needed. 38 U.S.C.A. §§ 5103(a), 5103A; 38 C.F.R. § 3.159(b); see Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002). The notice required must be provided to the claimant before the initial unfavorable decision on a claim for VA benefits, and it must (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5103(a); 38 C.F.R. § 3.159(b)(1); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004). 

The notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) veteran status; 2) existence of a disability; 3) a connection between the veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Upon receipt of an application for a service-connection claim, 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) require VA to review the information and the evidence presented with the claim and to provide the claimant with notice of what information and evidence not previously provided, if any, will assist in substantiating or is necessary to substantiate the elements of the claim as reasonably contemplated by the application. Additionally, this notice must include notice that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. 

A predecisional letter sent in July 2012, prior to the initial adjudication of this matter, stated what the evidence must show for service connection, the evidence the Veteran was expected to provide, and the evidence VA would seek to obtain, and further explained how a disability rating and effective date would be determined. The Board thus finds that VA's duty to notify has been satisfied through this letter.

The duty to assist is also found to have been satisfied in this case. The Veteran's service treatment records and lay statements have been associated with the claims file. The Veteran has not indicated that he undergoes treatment relating to his decreased hearing acuity and has not identified treatment records relevant to his claim that remain outstanding which he wants VA to acquire. The Veteran was also given the opportunity to present evidence and testimony at a hearing before the Board, and a transcript of that proceeding has been associated with the claims file. 

Further, the Veteran has been provided with VA examination and medical opinion regarding the nature and etiology of his hearing loss disability. He was provided with a VA medical examination in August 2012, and following remand by the Board, an additional VA examination and medical opinion regarding the issue on appeal was proffered in June 2015. Pursuant to the Board's March 2015 remand instructions, the June 2015 VA medical examiner conducted pure tone audiometric testing and word discrimination testing using the Maryland CNC word list. The examination report further notes review of the claims file, consideration of the Veteran's lay statements regarding in-service noise exposure, and contemplation of the audiograms contained in the service treatment records, converted into ISO units. Finally, the examiner provided an etiological opinion based on her findings regarding threshold shifts between service audiograms from the beginning and end of the Veteran's service and the Veteran's report of post-service occupational noise exposure. As the examiner described her analysis of the relevant evidence, and gave a clear rationale for the opinion provided, the Board finds the addendum medical opinion to be adequate for adjudicatory purposes and to substantially comply with the Board's March 2015 remand directives. Therefore, no further development is found needed in order to provide the Veteran with an adequate VA medical opinion or to ensure compliance with prior remand directives, as both have been achieved. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (VA must ensure adequate of VA examination or opinion if it undertakes to provide one); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998) where Board's remand instructions were substantially complied with). 

The available records and medical evidence have been obtained in order to make adequate determinations as to the claim. Hence, no further notice or assistance is required to fulfill VA's duty to assist in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio, 16 Vet. App. at 183.

B. Service Connection

Service connection may be established for disability resulting from personal injury suffered or disease contracted in the line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service. 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. §§ 3.303, 3.304 (2015). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

To establish service connection for a disability resulting from a disease or injury incurred in service, or to establish service connection based on aggravation in service of a disease or injury which pre-existed service, there must be (1) competent evidence of the current existence of the disability for which service connection is being claimed; (2) competent evidence of incurrence or aggravation of a disease or injury in active service; and (3) competent evidence of a nexus or connection between the current disability and the disease or injury incurred or aggravated in service. Horn v. Shinseki, 25 Vet. App. 231, 236 (2010); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). In many cases, medical evidence is required to meet the requirement that the evidence be "competent". However, when a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination "medical in nature" and is capable of lay observation. Barr v. Nicholson, 21 Vet. App. 303, 309 (2007).

Service connection for certain chronic diseases may be established on a presumptive basis by showing that the disease manifested itself to a degree of 10 percent or more within one year (three years for active tuberculous disease and Hansen's disease; seven years for multiple sclerosis) from the date of separation from service. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307(a)(3), 3.309(a). In such cases, the disease is presumed under the law to have had its onset in service even though there is no evidence of that disease during the period of service. 38 C.F.R. § 3.307(a). The term "chronic disease" refers to those diseases listed under section 1101(3) of the statute and section 3.309(a) of VA regulations. 38 U.S.C.A. § 1101(3); 38 C.F.R. § 3.309(a); Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2013). Sensorineural hearing loss, as an organic disease of the nervous system, is among the "chronic diseases" enumerated under section 3.309(a). See Fountain v. McDonald, 27 Vet. App. 258, 260 (2015).

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the benefit of the doubt shall be given to the claimant. 38 U.S.C.A. § 5107(b). When a reasonable doubt arises regarding service origin, such doubt will be resolved in the favor of the claimant. Reasonable doubt is doubt which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. 38 C.F.R. § 3.102. The question is whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which event the claim must be denied. See Gilbert, 1 Vet. App. at 54.


C. Hearing Loss

For the purposes of applying the laws administered by VA, impaired hearing will be construed to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz (Hz) is 40 decibels or greater; or, when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000 or 4000 Hz are 26 decibels or greater; or, when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.

The requirements of section 3.385 need only be met for the purposes of showing a current "disability" for service connection purposes. The purpose of section 3.385 is to establish guidelines for determining when a hearing "disability" is present so that service connection may be granted. It does not preclude service connection for a current hearing disability where hearing was within normal limits on audiometric testing at separation from service or where hearing loss was shown in service but not to the disabling degree depicted in section 3.385. See Hensley v. Brown, 5 Vet. App. 155, 159 (1993). The threshold for "normal" hearing is zero to 20 decibels, with higher threshold levels indicating some degree of hearing loss. See Id. at 157. 

D. Background

The Veteran's DD Form 214 documents active service with the United States Navy from May 1961 through March 1965, including service aboard the USS Independence (CVA-62). The military occupational specialty code listed indicates he served as a postal clerk.

Service audiograms have been associated with the Veteran's claims file. A May 1961 enlistment examination noted a score of 15/15 on a whispered voice test. A group screening audiogram, also from May 1961, documented pure tone thresholds, in decibels, as follows:





HERTZ




500
1000
2000
3000
4000
 6000
RIGHT
5 (20)
15 (25)
10 (20)
10 (20)
10 (15)
 5 (15)
LEFT
10 (25)
15 (25)
15 (25)
20 (30)
20 (25)
 20 (30) 

(NOTE: Prior to November 1967, audiometric results were reported in standards set forth by the American Standards Association (ASA). Those are the figures on the left of each column and are not in parentheses. Since November 1, 1967, those standards have been set by the International Standards Organization (ISO)-American National Standards Institute (ANSI). In order to facilitate data comparison, the ASA standards have been converted to ISO-ANSI standards and are represented by the figures in parentheses.)

An audiological examination for the Veteran's separation physical from March 1965 (also displayed in ASA and ISO units as described in the note above) documented pure tone thresholds, in decibels, as follows:




HERTZ




500
1000
2000
3000
4000
 6000
RIGHT
10 (25)
0 (10)
0 (10)
10 (20)
20 (25)
 15 (25)
LEFT
15 (30)
5 (15)
5 (15)
5 (15)
5 (10)
 15 (25) 

In April 2012, the Veteran filed VA Form 21-526EZ, Fully Developed Claim (compensation), claiming entitlement to service connection for hearing loss and tinnitus. The filing includes a statement indicating that the Veteran was stationed at an air base for 2 years, where he was exposed to jet and plane noise on a daily basis, and was further assigned to a carrier for 1.5 years, where he worked in an office space right below the flight deck. 

The Veteran was provided with a VA audiological examination in August 2012, where pure tone thresholds, in decibels, were recorded as follows:





HERTZ




500
1000
2000
3000
4000
 6000
RIGHT
5
10
10
0
5
0
LEFT
0
10
10
20
25
45 

Speech discrimination testing utilizing the Maryland CNC word list showed speech discrimination of 100 percent in the right ear and 98 percent in the left ear. As such, pure tone threshold and Maryland CNC word discrimination testing did not demonstrate decreased hearing acuity at such a level as would qualify as "disabled" hearing for VA service connection purposes under 38 C.F.R. § 3.385. Because a current disability was not shown, the examiner did not provide an etiological opinion.

The Veteran submitted his VA Form 9 in March 2013, including a statement regarding his in-service noise exposure. He reported that he served in an office directly below the flight deck where planes would take off several times daily for 1.5 years, and then was assigned to an air base for approximately 2 years where he was also exposed to noise from the flight line on a daily basis. The Veteran wrote that no hearing protection was provided, as he picked up and delivered mail, but that he was exposed to jet engine and other aircraft noises on a continual basis.

The Veteran presented testimony before the Board, via a videoconference hearing, in February 2014. At that time, he testified that he was exposed to a tremendous amount of noise working in a mailroom located directly below the flight deck on an aircraft carrier, and stated that the Navy did not provide the people in the postal room with hearing protection. He also stated that he was "located right on the flight line" of the base during the second part of his career, and would take mail up to the flight deck and bring it out to the planes. 

Pursuant to the Board's March 2015 remand directives, the Veteran was scheduled for an additional VA examination in June 2015. Audiological testing demonstrated pure tone thresholds, in decibels, as follows:




HERTZ





500
1000
2000
3000
4000
 6000
8000
RIGHT
15
15
15
15
65
70
80
LEFT
10
15
15
30
75
80
85

Speech discrimination testing utilizing the Maryland CNC word list demonstrated speech discrimination of 98 percent bilaterally. The examiner diagnosed the Veteran with bilateral sensorineural hearing loss, and opined that the current hearing loss was less likely than not related to military noise exposure. The examiner noted reviewing the claims file, particularly audiograms from May 1961 and March 1965, both converted to ISO units. She stated that threshold shifts were noted between these two exams, but then reviewed the shift recorded at each threshold and stated that each demonstrated either improvement in hearing acuity or a downward shift of 10 decibels or less, which is not considered to be clinically significant. The examiner acknowledged the Veteran's report of noise exposure from proximity to the flight line through his duties as a postal carrier, but noted that the Veteran also reported occupational noise exposure as a mechanic for 35 years after military service. She concluded by stating her opinion that due to the lack of significant threshold shifts documented between the entrance and exit exams, and because of the Veteran's 35 year post-service occupational noise exposure, his current hearing loss was less likely than not related to his military noise exposure.

E. Analysis

As an initial matter, the June 2015 VA audiological examination, using pure tone threshold and Maryland CNC word discrimination testing, documented a degree of diminished hearing acuity which meets the requirements of a current hearing loss "disability" for VA service connection purposes. See 38 C.F.R. § 3.385. The evidence thus demonstrates that the Veteran has a current hearing loss disability, and the question becomes whether such current disability arose during or is causally related to active military service.

In considering the evidence of record under the laws and regulations as set forth above, the Board finds that the weight of the evidence is against the Veteran's claim for service connection for bilateral hearing loss. Although the evidence demonstrates that the Veteran has a current bilateral hearing loss disability, the most probative evidence of record does not link the current disability to military service.

The Board finds that the June 2015 VA examination report represents the most probative evidence of record regarding the presence or absence of an etiological connection between the Veteran's current bilateral hearing loss disability and his military service. The report demonstrates awareness and consideration of the full evidence of record, noting that the examiner reviewed the electronic claims file, acknowledging the Veteran's lay statements regarding in-service noise exposure, and describing the audiometric data in such a manner as to make clear that the examiner contemplated the results of the in-service audiograms as converted into ISO units. Further, the examiner stated a clear rationale for the opinion provided, basing her conclusion upon the Veteran's report of post-service noise exposure and the lack of a significant downward shift in hearing threshold levels between entrance and separation from service. The Board finds that this report should be accorded significant probative weight, as it was based on full consideration of the Veteran's documented history and lay assertions, and is supported by a clearly-stated rationale. See, e.g., Hayes v. Brown, 5 Vet. App. 60, 69-70 (1993) (citing Wood v. Derwinski, 1 Vet. App. 190, 192-93 (1992)) and Guerrieri v. Brown, 4 Vet. App. 467, 470-471 (1993) (holding that the credibility and weight to be attached to medical opinions are within the province of the Board). 

Although the Veteran is competent to describe his in-service noise exposure and the Board finds no reason to doubt the sincerity of his belief that his current hearing loss is related to his in-service noise exposure, the Veteran is not competent to pinpoint the specific cause of his current hearing loss disability as between his various described noise-exposures (i.e. during military service and in his post-service occupation) and/or other causes of sensorineural hearing loss, including but not limited to advanced age. The Veteran and his representative have also not provided any contradictory evidence, other than the Veteran's lay assertions, that his current hearing loss is etiologically related to service. Additionally, while service connection may be awarded for a disability that arises during service, the Veteran has not presented evidence that he began experiencing hearing difficulties during service, and the Veteran's in-service audiograms do not demonstrate a clinically significant downward shift in hearing acuity (as explained by the June 2015 VA examiner) which could otherwise support a finding of in-service incurrence. Therefore, the Board finds the weight of the evidence to be against a finding that the Veteran's current hearing loss disability either arose during or was caused by his military service, and an award of service connection on a direct basis is not warranted.

The Board further notes that the Veteran has a current diagnosis of bilateral sensorineural hearing loss, an organic disease of the nervous system which is among the "chronic diseases" enumerated under section 3.309(a) for which service connection may be granted on a presumptive basis if the disease manifests to a degree of 10 percent or more within one year of separation from active military service. However, the Board finds that service connection is also not warranted under this theory, as the competent and credible evidence of record does not demonstrate the presence of decreased hearing acuity to such a degree as to qualify as a hearing loss disability until almost forty years after separation from service. Further, there is no evidence of record demonstrating or supportive of a conclusion that the Veteran's hearing loss arose to a degree of 10 percent or greater within one year of separation from military service as might allow for an award of service connection on a presumptive basis. Finally, although the Veteran has reported experiencing tinnitus on a recurrent basis since service, the Veteran has not reported experiencing difficulties with hearing since that time such as might allow for an award of service connection on a presumptive basis based on continuous symptomatology. 

In conclusion, although the Veteran has been provided with a diagnosis of sensorineural hearing loss of a degree which qualifies as a current "disability" for VA service connection purposes during the appeal period and the Veteran has competently and credibly described in-service noise exposure during service, the most probative evidence of record argues against the presence of a nexus between the two. Because a preponderance of the evidence is against the finding of an etiological connection, and the evidence does not demonstrate that the disability arose during service, service connection is not warranted on a direct basis. See 38 U.S.C.A. §§ 1110, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.304. Service connection is also not found to be warranted on a presumptive basis, as a preponderance of the competent and credible evidence of record weighs against a finding that the Veteran's bilateral hearing loss manifested to a compensable degree within one year of separation from service. See 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307(a)(3), 3.309(a).

For the foregoing reasons, the Board finds that the claim for entitlement to service connection for bilateral hearing loss must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the competent, probative evidence is against the claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). 


ORDER

Service connection for bilateral hearing loss is denied.




____________________________________________
KATHLEEN K. GALLAGHER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs