﻿Citation Nr: AXXXXXXXX
Decision Date: 01/29/21 Archive Date: 01/29/21

DOCKET NO. 200226-66076
DATE: January 29, 2021

ORDER

Service connection for a psychiatric disorder is denied. 

A total disability rating based on individual unemployability (TDIU) is denied. 

FINDINGS OF FACT

1. The Veteran does not have a service-connectable psychiatric disability that is related to service. 

2. The service connected disabilities have not rendered the Veteran unemployable.

CONCLUSIONS OF LAW

1. The criteria for service connection for a psychiatric disability have not been met. 38 U.S.C. § 1110; 38 C.F.R. §§ 3.303, 3.304. 

2. The criteria for a TDIU have not been met. 38 U.S.C. § 1155; 38 C.F.R. § 4.16.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service from July 1999 to July 2013. 

In the February 2020 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Direct Review docket. Therefore, the Board may only consider the evidence of record at the time of the February 2020 Statement of the Case. 38 C.F.R. § 20.301.

Service Connection

The Veteran contends that he has posttraumatic stress disorder (PTSD) or another psychiatric disorder as a result of in-service trauma. In October 2014, he reported stressors that he fell off a motorcycle and sustained road rash down his right side and broke his right leg in 2011, that he was deployed to Iraq and was among the shore personnel where he saw “killing” and where his squadron dropped bombs, and that he was deployed to Guantanamo Bay where he witnessed inmates hang themselves. In July 2015, the Veteran reported stressors of exposure to inmates hanging themselves and a motorcycle accident. In September 2016, the Veteran reported stressors of another soldier being shot in the leg while loading a bomb and the bomb dropping on him in 2006 while in Iraq. He also reported deployment to Iraq in 2006, where he witnessed bodies blown up in bombs and deployment to Guantanamo Bay in 2008 where he witnessed inmates hang themselves. In March 2017, the Veteran reported stressors of seeing bodies blown up while helping set up tents in Iraq in approximately January 2006. The Veteran also reported witnessing inmates hang themselves while deployed to Guantanamo Bay. 

Service connection may be established for disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303. 

Service connection may be granted for any disease initially diagnosed after discharge, when all the evidence, including that pertinent to service, establishes the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Generally, service connection for PTSD requires medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a); a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304(f). 

Service records indicate that the Veteran was assigned to NORU Pensacola Florida from June 2004 to January 2006 as a recruiter. An Evaluation Report for March 2006 to March 2007 reports that the Veteran was under the operational control of COMCARAIRWING EIGHT providing defense suppression in support of CVN operations and that he embarked on USS Theodore Roosevelt and detached at Mountain Home Air Force Base in Idaho and Naval Air Station Joint Reserve Base in Texas. The record reports that he was at ship;/station VAQ-141. April 2006 and February and June 2007 service treatment records report treatment in Washington state. An Evaluation Report for March 2007 to March 2008 reports that the Veteran was deployed to Japan and detached in three bases in Japan from the USS Theodore Roosevelt. An Evaluation Report for March 2008 to March 2009 indicates that the Veteran was deployed to Guantanamo Bay where he served primarily as administrative assistant leading petty officer with a collateral duty of travel clerk. 

Service records indicate that the Veteran was deployed to Guantanamo Bay from June to December 2008. Pre- and post-deployment assessments reveal the Veteran’s histories that emotional problems had not resulted in any difficulty in the previous four weeks. He denied treatment or current problems with trouble concentrating, memory impairment, or increased irritability. He denied encountering dead bodies or seeing people killed or wounded. He denied feeling that he was in great danger of being killed during deployment. He denied current symptoms of nightmares, avoidance, hypervigilance, numbing, anhedonia, or depression. A June 2008 treatment record reveals the Veteran’s negative history of service in Iraq or Afghanistan. Medication lists associated with service treatment do not reveal prescription of a medication for a psychiatric symptom or disorder. 

An August 2014 VA treatment record reveals the Veteran’s history of two deployments, once to Iraq for 1.5 months in 2006 and once to Cuba for six months in 2008. He reported that he was diagnosed with depression in 2009 while on active duty and receiving counseling through One Source Military. A subsequent August 2014 VA treatment record reports the Veteran’s history that he was previously seen for depression/anxiety and was sees by Mental Health services in 2010 for a counseling session secondary to acute stress from depression and post-deployment issues. The record reveals diagnosis of adjustment disorder. The record notes that a PTSD screening was positive though overall symptoms appeared mild and that the Veteran would be referred for assessment. A subsequent August 2014 treatment record reveals the Veteran’s history of a difficulty transitioning from combing back from Iraq and Cuba, going through a divorce, and missing his daughters who were in another state. He also reported difficulties adjusting to civilian life. He reported serving in Iraq but denied combat trauma. The examiner noted that the Veteran reported adjustment difficulties due to life stressors and diagnosed adjustment disorder not otherwise specified. 

A March 2015 VA treatment record reveals that the Veteran reported symptoms that were suggestive of PTSD, noting that the Veteran previously denied combat or military related trauma and related symptoms but reported traumatic events while a guard at Guantanamo Bay, Cuba during that session. The record reveals a diagnosis of rule out PTSD. A May 2015 PTSD clinic record indicates that the Veteran underwent a PTSD assessment. The Veteran reported a stressor of witnessing prisoners who were being force-fed because the inmates were trying to starve to death. He reported that the inmates were held down and detainees would insert a plastic mouthpiece that held the mouth open and they were then fed. He reported that witnessing this event brought back thoughts of his own childhood trauma of being force-fed beans, to which he was highly allergic. He also reported exposure to inmates that hung themselves. The examiner determined that the Veteran did not meet the criteria for PTSD; the Veteran did not endorse the full range of PTSD symptoms. The examiner diagnosed major depressive disorder. The record notes that the Veteran reported sporadic depression as a child, which worsened when he and his ex-wife separated several years earlier. 

A June 2015 VA treatment record reveals the Veteran’s history of combat deployment for six months in 2006, during which time he saw a man sucked into a propeller and witnessed detainees’ suicides by hanging. 

A July 2016 VA treatment record reveals the Veteran’s history of past treatment for PTSD. He reported deployment to Iraq where he was attached to an aviation squadron where he saw “bodies being blown up, a lot of shooting, a lot of people getting hit.” The examiner diagnosed other specified trauma or stressor disorder; other depressive disorder. A September 2016 VA treatment record reveals the Veteran’s history of depression and anxiety since deployment to Iraq and previous treatment for depression, anxiety, and PTSD since 2013. He reported stressors from deployment to Iraq of witnessing dead bodies. The examiner diagnosed unspecified trauma/stress related disorder. 

A November 2016 VA treatment record reveals the Veteran’s history that he had eight to nine deployments. 

A February 2017 psychological evaluation record noted the Veteran’s history of depression since 2006. He reported that he was deployed to Iraq in 2006 and then to Guantanamo Bay in 2008. The examiner noted that the Veteran did not report symptoms of PTSD. The examiner diagnosed major depressive disorder. 

March 2017 treatment record reveals the Veteran’s history of four months in Iraq in 2006 aboard an aircraft carrier. He reported that he was rotated to shore duty every two weeks and that he was sent back to Iraq once to twice per month after he returned to the United States. He reported that he saw people killed and experienced constant explosion of bombs. He also reported many accidents with planes taking off on the ship and that he saw a friend sucked into a jet engine. The records reveal a finding that the Veteran’s responses were generally vague and he had significant difficulty providing details, articulating thoughts and feelings, and separating out reactions to various events and situations. The record notes that when asked to go into detail, the Veteran stated that he was overlooked for promotion by several supervisors despite “having given it my all,” and when the examiner noted that this was a distinct issue from combat exposure, the Veteran reported that he needed trauma-focused therapy. The examiner noted that the Veteran was a poor informant which may reflect a number of factors. The provisional diagnosis was PTSD versus other specified trauma- and stressor-related disorder; unspecified depressive disorder. In an addendum, the record notes that the Veteran reported a stressor of being assaulted by 10 teenagers. 

An April 2017 VA examination record reveals diagnoses of unspecified anxiety and unspecified depression. The record indicates that the neuropsychological outcomes were invalid due to evidence of poor effort on cognitive measures and symptom exaggeration on self-report measures. The examiner stated that it did not mean that the Veteran was free from cognitive or emotional symptoms, and the examiner believed the Veteran had been struggling with post-military adjustment, divorce/custody issues, and financial stressors, but the profile yielded during the evaluation prevented the examiner from characterizing and quantifying the Veteran’s difficulties. The examiner found it highly unlikely that the Veteran experienced persistent cognitive symptoms from his reported concussion in 2011. He reported stressors of discovering inmates after they had hung themselves at Guantanamo Bay and a bomb dropping near him while he was in Iraq setting up tents. The examiner determined the Veteran did not meet the criteria for PTSD. The examiner reported that the Veteran had no pre-military history of mental health issues and a military history of chronic combat deployment and it was the examiner’s opinion that the Veteran’s mental conditions were at least as likely as not related to the claimed stressor during service. 

An April 2017 VA treatment record indicates that the Veteran provided some histories that were inconsistent with previously reported histories; that behavioral observations and objective indices of effort indicated poor effort and performance; and that validity indices on the MMPI-2-RF suggested noncredible report of psychological and cognitive symptoms. The examiner determined the Veteran likely over-reported symptoms and went out of his way to appear ill. 

A February 2018 private opinion from a licensed professional counselor, S.L.K., reveals the Veteran’s history of exposure to trauma being in a war zone setting in Iraq in 2006 and notes treatment for depression and anxiety shortly after leaving the military in 2014. S.L.K. determined the Veteran had anxiety and depression and that the disorders had their origins in active military service. 

A March 2018 VA treatment record notes that the Veteran had a positive response bias for PTSD; the examiner reported that the current diagnostic impression included other trauma- and stressor-related disorder (rule out PTSD) and major depressive disorder. 

After consideration of the evidence, the Board finds service connection is not warranted. Initially, the Board finds service connection is not warranted for a psychiatric disorder related to the reported combat or other stressors in Iraq and Guantanamo Bay. The record includes diagnoses of trauma-induced disorder due to in-service trauma and an April 2017 VA examiner’s and February 2018 private counselor’s findings that the current psychiatric disorder is related to the reported in-service stressors in Iraq and Guantanamo Bay. The Board finds the reported stressors are not credible, however; as such, the diagnoses and opinions based on those stressors are not probative. Regarding the reported Iraq service, there is no service notation suggestive of service in or near Iraq, service records indicate that the Veteran was stationed in the continental United States while reportedly serving on land in Iraq, and the June 2008 service record reveals negative history of service in Iraq. The Board finds the service personnel and medical records are more credible than the Veteran’s post-service histories of deploying to Iraq. Service records do corroborate the reported deployment to Guantanamo Bay. The records contradict the reported stressors, however. Notably, post-deployment records reveal the Veteran’s negative history of denied encountering dead bodies or seeing people killed or wounded and his service evaluation record does not corroborate that the Veteran served as a guard while in Guantanamo Bay. The Board finds the service personnel and medical records are contradictory to the reported stressors involving Guantanamo Bay and thus that the reported stressors are not credible. 

The Board further finds the record does not support the finding that a current psychiatric disability was present in service. Service treatment records do not reveal any histories or findings indicative of a psychiatric disability, the post-deployment evaluations are negative for psychiatric symptoms, the initial diagnosis dates more than a year after discharge from service, and postservice diagnoses have not included a disease considered “chronic” by VA. There is no medical evidence indicating that the Veteran manifested a current psychiatric disability during service. The Board notes that the February 2018 private opinions that the current psychiatric disorder had its “origins” in service. The opinion only discusses the reported in-service trauma, however, and provides no evidence or rationale in support of a finding that a current psychiatric disorder was present in service; the Board finds it is not probative evidence that a current psychiatric disorder was present during service. 

The Board acknowledges that the Veteran has reported symptoms during service and he has reported symptoms during and since service. The Board finds the current history of chronic symptoms during and since service is not probative. The Veteran has attributed the onset of his symptoms to deployment to Iraq, which the Board has determined is not corroborated by the record. The Board does find the Veteran’s histories of mood impairment and other symptoms concurrent with his divorce and post-deployment changes are not contradicted by the record. However, the record does not support the finding that the Veteran had chronic psychiatric disorder since that time. Notably, the post-deployment examination records reveal negative histories of emotional or psychological symptoms, and the Veteran did not report chronic symptoms at the time of initial treatment in August 2014 and he was diagnosed with a disorder that is not considered “chronic” by VA. The Board interprets this evidence as weighing against a finding of continuous symptoms since service. To the extent the history is probative evidence of intermittent psychological symptoms during and after service, and the record does not indicate that the Veteran is competent to attribute those symptoms to a current psychological disorder and the record is absent a medical determination of such a link. 

The Board also acknowledges that the Veteran reported treatment for depression in 2009 by One Source Military on August 5, 2014, and a counseling session for depression and post-deployment adjustment issues in 2010 on August 13, 2014. There are no corroborative treatment records of record, though all VA treatment records have been requested. The record does not indicate that records were requested from One Source Military. The Veteran’s claim for service connection was filed as a fully developed claim, and he has been asked to provide information about any outstanding treatment records (or to provide the records themselves) both in conjunction with the claim and in separate letters. See Hayes v. Brown, 5 Vet. App. 60, 68 (1993). Thus, the Board finds there is no error in adjudicating the matter based on the current record. 

In sum, the Board finds the record does not support the finding that a current psychiatric disorder was present during service or is etiologically related to service. Thus, the claim must be denied. 

TDIU

In March 2017, the Veteran filed a VA form 21-8940, reporting inability to secure or follow substantially gainful employment due to traumatic brain injury, lumbar spine disability, gastroesophageal reflux disease, PTSD, and kidney disease. He reported that he last worked full time February 26, 2016. 

A TDIU may be assigned if the schedular rating is less than total when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability, ratable at 60 percent or more, or as a result of two or more disabilities, provided that at least one disability is ratable at 40 percent or more and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). For those veterans who fail to meet the percentage standards set forth in 38 C.F.R. § 4.16(a), a TDIU nevertheless may be assigned when it is found that the service-connected disabilities are sufficient to produce unemployability. Such cases are referred to the Director of the VA Compensation Service for extra-schedular consideration. 38 C.F.R. § 4.16(b). 

Service connection is in effect for residuals of right fibular fracture (10 percent), lumbar spine disability (10 percent), radiculopathy of the right and left lower extremities (10 percent each), rhinitis (noncompensable), right ankle scarring (noncompensable), and right posterior trunk scarring (noncompensable). The Veteran has a combined rating of 40 percent from April 7, 2016. 

The Board finds the probative evidence does not suggest that the service-connected disabilities rendered the Veteran unable to obtain or maintain substantially gainful employment so that referral would be warranted. VA examination and treatment records do not indicate impairment sufficiently significant to result in unemployability. Notably, an October 2016 VA examination record reports that the ankle disability would affect occupational functioning due to pain with extended walking, running or standing, and a May 2017 VA examination record revealed the Veteran’s history of functional loss from pain with lifting heavy boxes and walking or standing for long periods with clinical findings of significant range of motion and normal neurological evaluation. 

VA treatment records reveal histories of “some” post-college education, reported as either junior college, technical college, college training, and a degree in network systems administration. The VA form 21-8940 reveals the Veteran’s report that he had only a high school education with no college education or other education or training. 

The Board finds the record does not suggest that the Veteran would have been unable to obtain or maintain gainful employment. The record indicates that the Veteran maintains significant range of motion in the spine and right lower extremity and neurological testing is objectively normal, and there is no indication of a worsening of his service-connected disabilities since he worked full-time. To the extent the Veteran reports occupational impairment due to the service-connected disabilities, the Board finds the Veteran’s symptomatic histories are of limited credibility and thus limited probative value based on the inconsistencies in the record, including the history of only high school education on the VA form 21-8940 which is contradicted by the Social Security Administration (SSA) and VA medical records. 

The Board acknowledges that the Veteran was found to be disabled by SSA due to his lumbar spine disability. However, the SSA records also include determinations by physicians that the Veteran’s physical disorders, which were not limited to the service-connected disabilities, would allow the Veteran to stand, sit, or walk with normal breaks for about six hours in an 8-hour workday and occasionally lift up to 20 pounds and determinations by a physician and a psychologist that the Veteran was “not disabled” given age, education and residual functional capacity. Moreover, although findings from SSA constitute probative evidence with respect to a TDIU claim, they are not dispositive or binding on VA. SSA’s legal criteria for assessing disability for Social Security benefits purposes differs in important respects from VA’s own framework for determining entitlement to TDIU. SSA bases disability on a claimant’s maximum residual functional capacity (MRFC), and whether there is substantial gainful activity that could be performed with that MRFC. A claim for TDIU focuses on unemployability based on impairments caused only by service-connected disabilities. Moreover, unlike SSA, VA does not take into account age in making its determination. Ultimately, therefore, SSA findings are not binding or controlling on VA. See Collier v. Derwinski, 1 Vet. App. 413, 417 (1991). 

In sum, the Board finds the clinical findings do not suggest that service-connected disabilities have resulted in unemployability. The Board has considered the doctrine of reasonable doubt in reaching this decision as well but has determined that it is not applicable to this claim because the preponderance of the evidence is against the claim. Thus, the claim is denied.

 

 

T. REYNOLDS

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board N. Snyder, counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.