Citation Nr: 1725241 
Decision Date: 06/30/17 Archive Date: 07/10/17

DOCKET NO. 10-36 195 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for Epstein-Barr syndrome. 

2. Entitlement to service connection for lupus. 

3. Entitlement to service connection for shingles. 

4. Entitlement to service connection for Stevens-Johnson syndrome. 

5. Entitlement to service connection for headaches. 

6. Entitlement to service connection for a psychiatric disability other than posttraumatic stress disorder (PTSD), to include depression. 


REPRESENTATION

Appellant represented by: Florida Department of Veterans Affairs


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

S. Layton, Counsel


INTRODUCTION

The Veteran served on active duty from April 1984 to December 1988.

This case comes before the Board of Veterans' Appeals (Board) on appeal from a May 2008 rating decision rendered by the St. Petersburg, Florida Regional Office (RO) of the Department of Veterans Affairs (VA).

In January 2016, the Veteran testified during a hearing before the undersigned Veterans Law Judge. A transcript of that hearing is of record.

Concerning the claim for service connection for a psychiatric disability, to include depression, that claim was denied in the May 2008 rating decision currently on appeal. The Board notes that a separate claim for service connection for posttraumatic stress disorder due to military sexual trauma was developed and then denied in an April 2013 rating decision. The Veteran did not file a notice of disagreement with that decision. Therefore, the Board has characterized the issue of entitlement to service connection for a psychiatric disability other than PTSD, to include depression as there is a final denial of service connection for PTSD.

In August 2016, the Board remanded the issues of entitlement to service connection for fibromyalgia, chronic fatigue syndrome, Epstein-Barr syndrome, lupus, shingles, Stephens-Johnson syndrome, headaches, and a psychiatric disability other than PTSD to the Agency of Original Jurisdiction for additional development. During the course of this development, service connection for fibromyalgia and chronic fatigue syndrome was established in a January 2017 rating decision, representing a full grant of those benefits sought. As no notice of disagreement has been filed regarding the disability ratings or the effective dates assigned, those issues are no longer before the Board.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issues of service connection for Epstein-Barr Syndrome, lupus, shingles, Stevens-Johnson Syndrome, and migraine headaches are REMANDED to the Agency of Original Jurisdiction.


FINDING OF FACT

The preponderance of the evidence weighs against associating any claimed psychiatric disability, other than PTSD, with any incident of service.


CONCLUSION OF LAW

The criteria for service connection for a psychiatric disability, other than PTSD, have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Board has thoroughly reviewed all the evidence in the claims file. The Board has an obligation to provide reasons and bases supporting a decision. However, there is no need to discuss, in detail, the evidence submitted by the Veteran or on behalf of the Veteran. The Board must review the entire record, but does not have to discuss each piece of evidence. Gonzales v. West, 218 F.3d 1378 (Fed. Cir. 2000). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claims. The Veteran should not assume that the Board has overlooked pieces of evidence that are not explicitly discussed. Timberlake v. Gober, 14 Vet. App. 122 (2000) (Board must address reasons for rejecting evidence favorable to the Veteran).

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the Veteran. Equal weight is not accorded to each piece of evidence contained in the record. Every item of evidence does not have the same probative value. When all the evidence is assembled, the Board is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Duties to Notify and Assist

VA has a duty to notify a Veteran of the information and evidence necessary to substantiate a claim for VA benefits. 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2016). VA also has a duty to assist Veterans in the development of claims. 38 U.S.C.A. §§ 5103, 5103A (West 2014).

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2016); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. The notice must be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

The notice requirements apply to all five elements of a service-connection claim, including: (1) Veteran status; (2) existence of a disability; (3) a connection between service and the disability; (4) degree of disability; and (5) effective date of the disability. The notice should include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Dingess v. Nicholson, 19 Vet. App. 473 (2006). Correspondence dated August 2007 and June 2009 provided all necessary notification to the Veteran.

VA has done everything reasonably possible to assist the Veteran with respect to her claims for benefits. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159(c) (2016). The service medical records have been associated with the claims file. All identified and available treatment records have been secured, which includes VA examinations, and VA and private health records.

VA's duty to assist also includes providing a medical examination or obtaining a medical opinion when necessary to make a decision on the claim, as defined by law. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. §§ 3.159(c)(4), 3.326(a) (2016); McLendon v. Nicholson, 20 Vet. App. 79 (2006). An adequate examination must consider the issue at hand and provide sufficient analysis for the Board to weigh that examination against others. Stefl v. Nicholson, 21 Vet. App. 120 (2007). However, there is no reasons or bases requirement imposed on examiners. Acevedo v. Shinseki, 25 Vet. App. 286 (2012). Rather, a medical opinion is adequate when it is based on consideration of a Veteran's prior medical history and examinations, and the final report describes the disability in sufficient detail so that the Board's evaluation of the claimed disability will be a fully informed one. Ardison v. Brown, 6 Vet. App. 405 (1994); Green v. Derwinski, 1 Vet. App. 121 (1991). Concerning the issue of entitlement to service connection for a psychiatric disability other than PTSD, the Board finds that the VA examinations provided are adequate.

Additionally, in light of treatment records that have been obtained and associated with the record, the obtaining of the requested medical opinions, and the further adjudicatory actions taken by the RO, the Board finds that there has been substantial compliance with the prior remand directives concerning the claim for service connection for a psychiatric disability other than PTSD. Stegall v. West, 11 Vet. App. 268 (1998); D'Aries v. Peake, 22 Vet. App. 97 (2008); Dyment v. West, 13 Vet. App. 141 (1999).

The Board is satisfied that all relevant facts have been adequately developed to the extent possible and that no further assistance is required to comply with the duty to assist. Accordingly, the Board will proceed with a decision.

Service Connection

Service connection may be granted for disability or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303 (2016). Service connection may also be granted for disability shown after service, when all of the evidence, including that pertinent to service, shows that it was incurred or aggravated in service. 38 C.F.R. § 3.303(d) (2016).

To establish a service connection for a disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163(Fed. Cir. 2004).

A disability may be service-connected if the evidence of record shows that the Veteran currently has a disability that was chronic in service or that was chronic as defined by regulation with continuity of symptomatology demonstrated after service. 38 C.F.R. § 3.303(a),(b) (2016); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

A disability that is proximately due to or the result of a service connected disease or injury shall be service connected. When service connection is established for a secondary condition, the secondary condition shall be considered a part of the original condition. 38 C.F.R. § 3.310(a) (2016). Secondary service connection may also be established for a non-service connected disability, which is aggravated by a service-connected disability. In that instance, the Veteran will be compensated for the degree of disability over and above the degree of disability existing prior to the aggravation. 38 C.F.R. § 3.310(b) (2016); Allen v. Brown, 7 Vet. App. 439 (1995).

A Veteran need only demonstrate that there is an approximate balance of positive and negative evidence in order to prevail. To deny a claim on its merits, the preponderance of the evidence must be against the claim. Alemany v. Brown, 9 Vet. App. 518 (1996); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Psychiatric Disability Other Than PTSD

The Veteran's October 1988 service separation examination shows that she was psychiatrically normal. On an October 1988 Report of Medical History, the Veteran reported that she did not experience depression or excessive worry.

A private treatment record from January 2013 contains a diagnosis of depressive disorder.

On VA PTSD examination in March 2013, the examiner diagnosed anxiety disorder and personality disorder. The examiner recorded the Veteran's report of sexual abuse at the age of 15 or 16. The examiner opined that the Veteran's anxiety disorder was not incurred in or aggravated by active service. For supporting rationale, the examiner stated that there were several inconsistencies in the record. It was noted that the Veteran reported being sexually abused prior to service by her father, and that her father died while she was in the service. The examiner noted that the Veteran was not sorry for her father's death, and that he was burned in a car. The examiner felt that the Veteran exhibited strong passive aggressiveness, extreme circumstantiality, gave overdetails in certain areas, and was evasive in other areas. 

In December 2016, the Veteran underwent additional VA examination. After performing a psychiatric examination, the examiner diagnosed unspecified personality disorder and amphetamine-type use disorder, mild. The examiner was disturbed by the Veteran's long-term stimulant medication treatment, as testing results from March 2010 and her personal history clearly ruled out AD/HD. The examiner stated that the majority of any remnant anxiety or agitation symptoms could likely be attributed to the misapplication of stimulant medication.

The examiner stated that the claimed psychiatric condition was less likely than not incurred in or caused by service. The examiner felt it was unreasonable to attribute the Veteran's psychiatric issues to her four years of service. The examiner acknowledged that the Veteran suffered a traumatic event of repeated sexual molestation and rape by her father while a minor, but her current symptoms were deemed subclinical for PTSD in the current evaluation. The examiner noted that the Veteran's reports regarding her relationships, military sexual trauma, and AD/HD were filled with inconsistencies. The examiner gave an example of the Veteran reporting disparate incidents of military sexual trauma in the 2013 VA examination versus the current examination. The examiner noted that the Veteran state that she suffered from attentional difficulties and had been treated with stimulant medication for several years. However, a thorough neuropsychological evaluation conducted in March 2010 ruled out AD/HD and memory problems and found normative attentional and memory processes in the testing results. The examiner found it highly likely that the Veteran's ongoing "yet inappropriate" treatment stimulat medication from non-VA private sector physicians was chemically producing sub-clinical mood, agitation and paranoia symptoms. 

The examiner acknowledged the January 2013 private record, but stated that the listing of PTSD and depression was based on the Veteran's report and not adequate evaluation and testing by the private doctor. The examiner noted that the private doctor's role was to evaluate for possible seizure activity, and he was merely making a psychiatric referral for the Veteran. The examiner noted that the Veteran has "a very long list" of complaints, and the statistical possibility of so many medical and psychiatric issues occurring at one time in one human being was "incredibly small." The examiner concluded that "[s]uch a number will require the consideration of malingering in this case."

The Board finds that the Veteran is not entitled to presumptive service connection for a psychiatric disability as a chronic disease pursuant to the provisions of 38 C.F.R. § 3.309(a). The earliest post-service medical treatment records diagnosing the Veteran with any psychiatric disability are dated in 2013, and the Veteran separated from active duty in 1988. Specifically, no diagnosis of a psychosis was made within one year of separation from service. Thus, the Board finds that the presumption for service connection for chronic diseases does not apply. 38 U.S.C.A. §§ 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307(a), 3.309(a) (2016).

The evidence of record shows that the Veteran has a current diagnosis of psychiatric disabilities, other than PTSD. The Board has considered whether service connection for those disabilities could be warranted on a direct basis. Significantly, none of the Veteran's medical treatment providers have given any indication in the record that the Veteran's psychiatric disabilities, other than PTSD, could be related to active duty service. The only evidence which provides any connection between the Veteran's psychiatric disabilities, other than PTSD, and service comes from the Veteran herself.

It is to be noted that the Board is not free to substitute its own judgment for that of a medical expert. Colvin v. Derwinski, 1 Vet. App. 171 (1991). However, the Board is required to assess the credibility and weight to be given to evidence. Madden v. Gober, 125 F.3d 1477 (Fed. Cir. 1997). The Board has considered the Veteran's and other lay statements. Laypersons are competent to provide opinions on some medical issues. Kahana v. Shinseki, 24 Vet. App. 428 (2011). However, as to the specific issue in this case, whether a psychiatric disability other than PTSD was caused by active service, or is otherwise related to service or any service-connected disability, those issues fall outside the realm of common knowledge of a layperson. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). As a layperson, it is not shown that the Veteran possesses the medical expertise to provide diagnosis or etiology opinions, and no competent nexus opinions are of record. The Veteran and representative have not submitted any competent medical opinions that relate any of the claimed psychiatric disabilities, other than PTSD, to service.

The December 2016 VA examiner opined that it was less likely than not that Veteran's psychiatric disabilities were related to active service. The Board finds the December 2016 VA examiner's opinion to be more probative than the lay statements of record. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). The opinion of the December 2016 VA examiner is highly probative because it is supported by a detailed rationale and provided by a trained psychiatric professional. The VA examiner specifically identified and discussed the Veteran's contentions and theory concerning service and her psychiatric disabilities. Accordingly, the December 2016 VA opinion is found to carry significant weight. Among the factors for assessing the probative value of a medical opinion are the physician's access to the claims file and the thoroughness and detail of the opinion. Hayes v. Brown, 5 Vet. App. 60 (1993) (it is the responsibility of the Board to assess the credibility and weight to be given the evidence); Wood v. Derwinski, 1 Vet. App. 190 (1992). The probative value of medical evidence is based on the physician's knowledge and skill in analyzing the data, and the medical conclusion he reaches; as is true of any evidence, the credibility and weight to be attached to medical opinions are within the province of the Board. Guerrieri v. Brown, 4 Vet. App. 467 (1993).

Accordingly, after a careful review of the evidence of record, the Board finds that the preponderance of the evidence is against the claim. No causal connection between the Veteran's service and psychiatric disabilities, other than PTSD, is demonstrated by the evidence of record. The Board finds it significant that the Veteran herself indicated on an October 1988 Report of Medical History at the end of her active duty that she did not experience depression or excessive worry. That apparent contradiction with the Veteran's current assertions of a continuity of symptomatology makes her assertions less credible.

The Board is appreciative of the Veteran's faithful and honorable service to our country. However, because the preponderance of the evidence is against the claim, the claim must be denied. As the preponderance of the evidence is against the claims of entitlement to service connection for a psychiatric disability, other than PTSD, the claim must be denied. 38 U.S.C.A. § 5107(b) (West 2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).
ORDER

Entitlement to service connection for a psychiatric disability other than PTSD, to include depression, is denied.


REMAND

The Veteran has claimed that her active duty responsibilities frequently exposed her to chemicals and gasses, and those chemical exposures have led to her present skin conditions and autoimmune system problems. The Veteran's service personnel records confirm that her military occupational specialty was 54B or Chemical Operations Specialist. 

In August 2016, the Board remanded the claims for Epstein-Barr Syndrome, lupus, shingles, Stevens-Johnson Syndrome, and headaches to provide the Veteran VA examinations for an etiology opinion concerning the claimed disorders. She was provided a VA examination concerning these conditions performed by a single examiner in December 2016.

The examiner indicated that the Veteran was diagnosed with Epstein Barr in 1990 and Herpes Zoster in 1998. In the next section of the report, the examiner stated that the Veteran was diagnosed with Epstein-Barr Syndrome in 1987. The examiner opined that the Veteran's claimed Epstein Barr was less likely than not incurred in or caused by her service. The examiner noted that the medical record showed that the lab results from February 2007 were positive Epstein-Barr, and that was past the Veteran's enlistment period and most likely not caused by anything that occurred during her enlistment.

The examiner indicated that the Veteran was diagnosed with Stevens Johnson Syndrome in 2005. The examiner also indicated that the Veteran was diagnosed with shingles in 1998. The examiner later stated that the onset of both disabilities was 1985. At the end of the examination report, the examiner stated that there was no diagnosis of shingles or Stevens-Johnson syndrome because there was no pathology to make a diagnosis. The examiner later stated that Stevens-Johnson was less likely than not incurred in or caused by service as a medical records review showed no treatment for Stevens-Johnson in service and no treatment or diagnosis outside of service. The examiner also stated that shingles was less likely than not incurred in or caused by the Veteran's service, as a medical record review showed that the Veteran was never treated for shingles in service and her shingles only began after leaving service.

The examiner indicated that the Veteran was diagnosed with discoid lupus erythematosus and systemic lupus erythematosus in 1990. The examiner indicated that the lupus began in 1990. The examiner opined that the Veteran's claimed lupus was less likely than not incurred in or caused by her service, as a medical records review showed no definite finding to suggest active systemic lupus.

The examiner indicated that the Veteran was diagnosed with migraine headaches in 1985. Later, the examiner opined that the Veteran's headaches were less likely than not caused by her service. The examiner stated that although the Veteran was treated in August 1984 after hitting her head on a locker, the next diagnosis of headaches shown in the treatment record was in an October 2005 treatment record. The examiner stated that there was too much time that passed to claim that the head injury caused the headache condition.

When VA provides an examination or obtains an opinion, the examination or opinion must be adequate. Barr v. Nicholson, 21 Vet. App. 303 (2007). The December 2016 VA examination report contains contradictions and inaccuracies. The report is unclear regarding which statements were a recounting of the Veteran's self-reported history, which statements were based on objective observation, and which statements were actually made from an accurate review of the available treatment records. Further, an opinion that relies only on the absence of symptoms or treatment since service is not adequate. 

Specifically concerning shingles, Stevens-Johnson Syndrome, and lupus, the Board further notes that a grant of service connection requires that there be a current disability. However, the requirement that there be a current disability is satisfied when the disability is shown at the time of the claim or during the pendency of the claim, even though the disability subsequently resolves. McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). Although the December 2016 VA examiner did not find current shingles, Stevens-Johnson Syndrome, and lupus, all of these disabilities have been found during or contemporary to the appeals period, or at some time of record.

An additional opinion is necessary to address the nature and etiology of the Veteran's bilateral ankles, tinea pedis, and right wrist. 

Accordingly, the case is REMANDED for the following action:

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.

1. Obtain all pertinent VA and private medical records not yet associated with the record.

2. Request an addendum opinion from the examiner who conducted the December 2016 evaluation of the Veteran. The examiner must review the claims file and the prior examination reports. The examiner should clarify the date of onset of the Veteran's Epstein-Barr Syndrome, lupus, shingles, Stevens-Johnson Syndrome, and migraine headaches. The examiner should clarify which statements in the prior reports were based on the Veteran's self-reported history, which statements were based on objective examination of the Veteran, and which statements were based on a review of the treatment records. Based upon the review of the claims file and prior examination reports, the examiner should opine whether it is at least as likely as not (50 percent or greater probability) that Epstein-Barr Syndrome, lupus, shingles, Stevens-Johnson Syndrome, and headaches were incurred in or are otherwise related to active service. The examiner must consider and discuss the Veteran's specific contention that her active duty responsibilities frequently exposed her to chemicals and gasses, and those chemical exposures have led to her present skin conditions and autoimmune system disorders. Dalton v. Nicholson, 21 Vet. App. 23 (2007). The examiner should specifically note that the absence of in-service evidence of symptoms is not always fatal to a service connection claim and should consider the Veteran's reports and lay statements. If there is another likely etiology for the Veteran's Epstein-Barr Syndrome, lupus, shingles, Stevens-Johnson Syndrome, and migraine headaches, that should be stated. If the December 2016 examiner is unavailable, schedule an examination with a medical doctor examiner with appropriate expertise to review the record and provide the requested opinions. Any opinion expressed must be accompanied by a complete rationale.

3. Then, readjudicate the claims remaining on appeal. If any decision is adverse to the Veteran, issue a supplemental statement of the case and allow the applicable time for response. Then, return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or the United States Court of Appeals for Veterans 


Claims for additional development or other appropriate action must be handled in an expeditious manner. 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
Harvey P. Roberts
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs