Citation Nr: 1806342 
Decision Date: 01/10/18 Archive Date: 02/07/18

DOCKET NO. 13-30 792 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Portland, Oregon


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss, to include as secondary to service-connected otitis externa.

2. Entitlement to service connection for tinnitus, to include as secondary to service-connected otitis externa.


REPRESENTATION

Appellant represented by: Oregon Department of Veterans' Affairs


WITNESS AT HEARING ON APPEAL

The Veteran



ATTORNEY FOR THE BOARD

K. Osegueda, Counsel



INTRODUCTION

The Veteran had active service from September 1967 to October 1975. His military occupational specialty (MOS) was helicopter repairman. He had additional service in the United States Army Reserve before and after his active duty service.

This matter initially came before the Board of Veterans' Appeals (Board) on appeal from a July 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Portland, Oregon.

In March 2016, the Veteran testified at a videoconference hearing before the undersigned Veterans Law Judge. A transcript of that hearing has been associated with the record.

Thereafter, the Board requested an advisory medical opinion from the Veterans Health Administration (VHA) in July 2016. The Veteran and his representative were sent a copy of the opinion and given 60 days to submit further evidence or argument. See 38 C.F.R. §§ 20.901, 20.903 (2017). Neither the Veteran nor his representative submitted any additional evidence or argument.


FINDINGS OF FACT

1. The Veteran's bilateral hearing loss did not manifest during service or within one year of separation and is not otherwise related to service. 

2. The Veteran's bilateral hearing loss was not caused or aggravated by his service-connected otitis externa.

3. The Veteran's tinnitus did not manifest during service or within one year of separation and is not otherwise related to service. 

4. The Veteran's tinnitus was not caused or aggravated by his service-connected otitis externa.


CONCLUSIONS OF LAW

1. Bilateral hearing loss was not incurred in active service, sensorineural hearing loss is not presumed to have been so incurred, and bilateral hearing loss is not proximately due to, the result of, or aggravated by a service-connected disability. 38 U.S.C. §§ 1101, 1112, 1113, 1131, 1137 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.385 (2017).
 
2. Tinnitus was not incurred in active service, is not presumed to have been so incurred, and is not proximately due to, the result of, or aggravated by a service-connected disability. 38 U.S.C. §§ 1101, 1112, 1113, 1131, 1137 (2012); 38 C.F.R. §§3.102, 3.159, 3.303, 3.307, 3.309 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).



Law and Analysis

In this case, the Veteran has contended that his current bilateral hearing loss and tinnitus began in service as a result of noise exposure from his work as a helicopter repairman. Alternatively, he has claimed that his bilateral hearing loss and tinnitus were caused by his service-connected otitis externa.

Service connection may be established for disability resulting from personal injury suffered or disease contracted in line of duty in the active military, naval, or air service. 38 U.S.C. §§ 1110, 1131. That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b). Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d).

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. As organic diseases of the nervous system, including sensorineural hearing loss and tinnitus, are considered to be chronic diseases for VA compensation purposes, if chronicity in service is not established, a showing of continuity of symptoms after discharge may support the claim. 38 C.F.R. §§ 3.303(b), 3.309; Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013); Fountain v. McDonald, 27 Vet. App. 258 (2015) (holding that the presumptive provisions of 38 C.F.R. § 3.309(a) include tinnitus as an organic disease of the nervous system where there is evidence of acoustic trauma).

In addition, for veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, including organic diseases of the nervous system (sensorineural hearing loss and tinnitus), are presumed to have been incurred in service if they manifested to a compensable degree within one year of separation from service. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309.

Service connection may also be granted on a secondary basis for disability which is proximately due to or the result of service-connected disease or injury, or for additional disability resulting from the aggravation of a nonservice-connected disability by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc); 38 C.F.R. § 3.310.

For the purposes of applying the laws administered by the VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. 

The absence of in-service evidence of a hearing disability during service (i.e., one meeting the requirements of 38 C.F.R. § 3.385) is not always fatal to a service connection claim. See Ledford v. Derwinski, 3 Vet. App. 87, 89 (1992). Evidence of a current hearing loss disability and a medically sound basis for attributing that disability to service may serve as a basis for a grant of service connection for hearing loss where there is credible evidence of acoustic trauma due to significant noise exposure in service, post-service audiometric findings meeting the regulatory requirements for hearing loss disability for VA purposes, and a medically sound basis upon which to attribute the post-service findings to the injury in service (as opposed to intercurrent causes). See Hensley v. Brown, 5 Vet. App. 155, 159 (1993). 

In this case, the Veteran's service treatment records do not document any complaints, treatment, or diagnosis of hearing loss or tinnitus. The Veteran's service treatment records do include documentation of treatment for bilateral otitis externa in June 1967, August 1973, May 1974, and June 1979. In the June 1979 service treatment record, the Veteran was treated for a left ear infection that was diagnosed as left otitis externa, and it was noted that the Veteran's left ear canal was almost swollen shut. He was also treated for otitis media in October 1972. In that service treatment record, the affected ear was not indicated; however, it was noted that the membrane was bulging and red, but not draining. 

In a January 1967 enlistment examination report, a normal clinical evaluation of the ears was noted. An audiogram showed pure tone thresholds, in decibels, as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
-5 (10)
0 (10)
5 (15)
5 (15)
0 (5)
LEFT
0 (15)
5 (15)
15 (25)
15 (25)
15 (20)

(NOTE: Prior to November 1967, audiometric results were reported in standards set forth by the American Standards Association (ASA). Those are the figures on the left of each column and are not in parentheses. Since November 1, 1967, those standards have been set by the International Standards Organization (ISO)-American National Standards Institute (ANSI). In order to facilitate data comparison, the ASA standards have been converted to ISO-ANSI standards and are represented by the figures in parentheses.)

In a January 1967 enlistment report of medical history, the Veteran denied having any ear trouble or hearing loss.

In a May 1972 flight examination report, a normal clinical evaluation of the ears was noted. An audiogram showed pure tone thresholds, in decibels, as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
15
20
20
N/A
15
LEFT
0
20
20
N/A
35

In an associated report of medical history, the Veteran denied having any hearing loss.

In a May 1973 flight examination report, a normal clinical evaluation of the ears was noted. An audiogram showed pure tone thresholds, in decibels, as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
0
0
0
N/A
0
LEFT
5
5
5
N/A
0

In a March 1974 flight examination report, a normal clinical evaluation of the ears was noted. An audiogram showed pure tone thresholds, in decibels, as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
0
5
5
N/A
5
LEFT
0
5
0
N/A
5

In a January 1975 flight examination report, a normal clinical evaluation of the ears was noted. An audiogram showed pure tone thresholds, in decibels, as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
0
0
0
N/A
0
LEFT
0
5
0
N/A
15

In an August 1975 separation examination report, a normal clinical evaluation of the ears was noted. An audiogram showed pure tone thresholds, in decibels, as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
0
0
0
N/A
0
LEFT
0
0
0
N/A
0

In a December 1975 VA examination report, the examiner noted that a careful examination of the Veteran's ears revealed no evidence of any infection. The examiner reported that the Veteran heard spoken and whispered voice normally, and hearing loss was not noted. 

In a December 1975 VA ear, nose, and throat consultation report, the Veteran complained of right ear pain. On examination, the eardrum was normal in appearance. The diagnosis was probable right external otitis in the past with no infection at the time of that examination.

In a July 1982 Reserve examination report, a normal clinical evaluation of the ears was noted. An audiogram showed pure tone thresholds, in decibels, as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
0
0
0
0
0
LEFT
0
0
0
0
0

In an associated report of medical history, the Veteran denied any hearing loss.

In a November 1982 Reserve examination report, a normal clinical evaluation of the ears was noted. An audiogram showed pure tone thresholds, in decibels, as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
15
15
10
5
10
LEFT
10
20
15
5
15

In an associated report of medical history, the Veteran denied any hearing loss.

An October 2007 private employment audiology report listed audiometric data for audiograms dated in October 2001, November 2002, November 2004, November 2005, October 2006, and October 2007 as follows:

October 2001


HERTZ



500
1000
2000
3000
4000
RIGHT
15
25
30
30
50
LEFT
15
25
30
40
50

November 2002


HERTZ



500
1000
2000
3000
4000
RIGHT
15
25
25
40
55
LEFT
15
30
30
40
55

November 2004


HERTZ



500
1000
2000
3000
4000
RIGHT
20
25
40
40
55
LEFT
20
35
30
45
60

November 2005


HERTZ



500
1000
2000
3000
4000
RIGHT
20
30
40
40
55
LEFT
20
30
35
50
60

October 2006


HERTZ



500
1000
2000
3000
4000
RIGHT
20
25
40
45
55
LEFT
20
40
35
50
65

October 2007


HERTZ



500
1000
2000
3000
4000
RIGHT
30
30
40
40
55
LEFT
20
35
40
50
60

In a November 2010 private audiology report, the audiologist noted that the Veteran had reported a sudden hearing loss in his right ear that was accompanied by pressure and loud tinnitus one month earlier. He stated that he had a slight hearing loss before this occurred, but he was only able to hear sharp tones in his right ear at the time of the evaluation. He stated that he was unable to hear normal speech. He also reported a history of binaural tinnitus, but stated that, since the sudden hearing loss, the ringing or hissing sound in his right ear became very loud and he no longer noticed the tinnitus in his left ear. He indicated that he had military noise exposure from working around helicopters for eight years. Pure tone audiometry revealed a moderately-severe rising to mild low-frequency sensorineural hearing loss sloping to a moderate to profound mid- and high-frequency sensorineural hearing loss in the right ear and hearing within normal limits at 250 Hertz sloping to a mild to moderately-severe high-frequency sensorineural hearing loss in the left ear. The audiogram showed pure tone thresholds, in decibels, as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
55
40
45
50
60
LEFT
25
35
40
65
65

Speech discrimination in quiet at a conversational speech level of 50 decibels was 20 percent for the right ear and 92 percent for the left ear. Speech discrimination improved to 96 percent for the right ear at his most comfortable listening level at 70 decibels. The audiologist noted that the test results revealed a significant, asymmetric sensorineural hearing loss. 

In a July 2011 VA audiology examination report, an audiogram showed pure tone thresholds, in decibels, as follows: 




HERTZ



500
1000
2000
3000
4000
RIGHT
40
35
35
45
55
LEFT
20
30
40
55
60

Speech recognition scores were 88 percent in the right ear and 94 percent in the left ear. The diagnosis was bilateral sensorineural hearing loss. The examiner opined that, although the Veteran reported noise exposure during service from helicopter noise, his separation examination revealed normal hearing bilaterally with no significant threshold shifts documented. The examiner indicated that the Veteran did not report hearing loss or tinnitus at separation from service, but he reported his hearing difficulties and tinnitus were progressing slowly over the years. The examiner noted that the Veteran reported significant post-service occupational noise exposure from construction and millwork and recreational noise exposure from the use of power tools and chainsaws without the use of hearing protection at times. The examiner also noted that the Veteran was treated for a sudden change in hearing accompanied by pressure and severe tinnitus in his right ear in November 2010. The examiner reported that an etiology was not determined despite a magnetic resonance imaging (MRI) study. Therefore, the examiner opined that the Veteran's current hearing loss was most likely the result of post-service noise exposure, aging, and a medical condition. With respect to tinnitus, the July 2011 VA examiner noted that the Veteran reported recurrent tinnitus, but he was unable to recall a specific onset. The examiner opined that the Veteran's tinnitus was at least as likely as not a symptom associated with his hearing loss.

In a September 2011 notice of disagreement, the Veteran's representative reported that the Veteran suffered acoustic trauma working on helicopters that was more significant than any occasional exposure following service. He related that the noise exposure during service was the first time the Veteran was ever exposed to acoustic trauma of a magnitude that could cause hearing loss and tinnitus. He contended that, while the Veteran's separation examination audiogram may have demonstrated hearing within normal limits, the Veteran's hearing loss did decrease between his first audiogram at enlistment and his audiogram at separation from service. In addition, the Veteran's representative noted that the Veteran has repeatedly stated that he did not have tinnitus before service, but that he certainly noticed it since service. He stated that he never complained because he thought it was something that he had to live with and that he did not realize that it was a condition that could be claim as a service-connected disability until one year ago. 

During a July 2013 informal hearing conference with a Decision Review Officer (DRO) at the RO, the Veteran stated that he was continuously exposed to loud noise as a helicopter repairman and technical inspector for eight years. He stated that there were no rules regarding hearing protection and that adequate hearing protection was not provided during the time that he served in the Army. The Veteran's representative noted that his service treatment records showed that he was treated for chronic ear infections and that his hearing loss and tinnitus may be associated with his service-connected otitis externa.

In an August 2013 VA addendum opinion, the VA examiner noted that the Veteran had several service treatment records dated from October 1972 to May 1974 that indicated that he was treated for otitis media or otitis externa. She noted that audiometric records also included enlistment, separation, and multiple annual examinations. She indicated that all of the examinations revealed normal hearing bilaterally with no significant threshold shifts, except for one dated in May 1972. She stated that the test from May 1972 would have been completed using ISO standards while the enlistment examination from 1967 would have been completed using ASA standards. She explained that, in order to compare thresholds, they needed to be converted to be compared and that, once the 1967 was converted, there were no significant threshold shifts when compared to the 1972 results. The VA examiner opined that the Veteran's hearing loss was not at least as likely as not caused by or a result of service, including military noise exposure. She noted that, although the Veteran reported military noise exposure from helicopter noise and mortars or rockets, his separation examination revealed normal hearing bilaterally with no significant threshold shifts when compared to his enlistment examination. In fact, she noted that his hearing improved at separation and on multiple annual examinations in 1973, 1974, and 1975 when compared to his enlistment examination. She observed that one examination in 1972 revealed poorer thresholds than the 1973 through 1975 examinations, but there were no notes or bone conduction scores. Therefore, she explained that there was no way to determine if the poorer thresholds were the result of noise exposure, wax build-up, faulty equipment, or related to an ear infection for which he was treated in 1972. Regardless, she reported that the thresholds improved over multiple tests indicating that there was no permanent hearing loss resulting in grossly normal hearing bilaterally at separation. She explained that there is no scientific evidence to support a nexus between the Veteran's current hearing loss and events during service because his hearing was clinically normal at separation. She reported that, in 2006, the Institute of Medicine reported that hearing loss from noise injuries occurs immediately following exposure based on current understanding of auditory physiology. The VA examiner noted that the Veteran reported that his hearing difficulties and ringing occurred well after service and had been progressing slowly over the years. She related that he also reported significant occupational noise exposure following service, including work in construction and millwork, and recreational noise exposure, including noise from power tools and chainsaws. The examiner further indicated that the Veteran was treated for a sudden change in hearing accompanied by pressure and severe tinnitus in the right ear in November 2010 and that, despite having an MRI, the etiology was not determined. Therefore, she opined that the Veteran's current hearing loss was most likely the result of post-service noise exposure, aging, and a medical condition.

Concerning tinnitus, the August 2013 VA examiner opined that the Veteran's tinnitus was at least as likely as not a symptom associated with his diagnosed hearing loss. She also opined that the Veteran's tinnitus was less likely as not caused by or a result of military noise exposure. In so doing, she noted that there was no evidence in the Veteran's service treatment records that he complained of tinnitus during service. In addition, he reported that his tinnitus and hearing difficulties began well after service. Again, she referenced the 2006 Institute of Medicine study that, based on current understanding of auditory physiology, hearing loss and tinnitus from noise injuries occur immediately following exposure. 

In March 2016, the Veteran submitted statements and evidence in support of his claim, including a December 1990 study published by the Navy Environmental Health Center concerning the Navy enlisted ratings suspected to be at the greatest risk for noise-induced hearing loss and an October 1979 Noise Effects Handbook published by the National Association of Noise Control Officials. 

In his March 2016 statement, the Veteran stated that he was exposed to a lot of noise in service, including helicopter noise. He related that he worked as a helicopter mechanic, maintenance instructor, flight platoon sergeant, and maintenance inspector during service. He indicated that he was unable to remember if he had a hearing test when he was discharged in 1975, but others noticed it in the early 1980s before he was diagnosed in approximately 2004. Following service, he related that he worked at drafting tables in offices as an engineering technician and draftsman until late 1992 and that he was a self-employed contractor from 1993 until 2001. He stated that he subsequently worked as a subcontractor with a window manufacturing franchise and that he was exposed to loud noise. He related that he could not remember not having tinnitus since service. He stated that he thought the constant ringing in his ears was normal until it became so loud that he was unable to concentrate on anything else. 

In a March 2016 statement, the Veteran's wife reported that she began dating the Veteran in the fall of 1980. She noted that the Veteran did not seem to engage in activities or gatherings during that time and, when he did engage in conversations, he would mention something that did not fit into the conversation. He told her that he did not hear conversations the way that she could and stated that he would hear different words and respond accordingly. She also stated that he watched television at such a high volume that she could hear it while getting out of the car in their driveway. 

During the March 2016 hearing, the Veteran's representative contended that the Veteran's in-service audiograms were unreliable because they showed improvement, followed by decreased hearing, and then improvement. He related that the 1992 report regarding Navy enlisted ratings suspected to be at the greatest risk for noise-induced hearing loss states that hearing tests conducted prior to the early 1980's were poorly documented. He stated that poor testing practices, including whispered hearing testing, were common during the time of the Veteran's service. He also noted that the October 1979 Noise Effects Handbook showed that VA examiners put more emphasis on intermittent noise exposure after service than the Veteran's significant, constant noise exposure during service. The Veteran's representative reported that the Veteran spent a majority of his post-service employment at a desk in an office. He stated that the Veteran went hunting once per year and mowed the lawn every two weeks, which did not come close to the level of noise that he was exposed to on a daily basis as a helicopter mechanic. The Veteran's representative also contended that no medical personnel asked the Veteran if he had tinnitus during service. He noted that the Veteran had stated that he did not even realize that tinnitus was an abnormal condition and that he thought that everyone had ringing in their ears. Therefore, the representative contended that the lack of complaints of tinnitus during service is irrelevant. In addition, the Veteran's representative asserted that the Veteran's statement that his tinnitus began 20 to 30 years earlier was a general statement and that his written statements that indicated that his tinnitus began in service should be afforded greater weight. 

In a July 2017 VHA medical opinion, the examiner noted that the Veteran submitted relevant and useful articles demonstrating that noise exposure, especially in certain military occupations, is associated with hearing loss. However, he distinguished it noting that the question in this case is whether noise exposure during service caused bilateral hearing loss in this particular veteran. He referenced the Veteran's contention that the audiograms during service were "all over the place," but indicated that the Veteran's audiometry results during service were merely inconsistent and failed to consistently demonstrate hearing loss. He stated that an impartial review of the available evidence cannot support the contention that the Veteran's hearing loss manifested during service. In addition, he indicated that the contention of hearing loss within one year of service was merely speculative. The examiner noted that the Veteran's service treatment records demonstrated multiple episodes of otitis externa, including one severe episode that could have been associated with otitis media and one specific episode of otitis media; however, there was no documentation of tympanic membrane perforation or drainage. The examiner also noted that the service treatment records documented no follow-up to the episodes of otitis externa or media and that there was no documentation of treatment failure or of consequences of those episodes. The examiner stated that otitis externa could be dismissed as a cause of hearing loss and tinnitus because there was no plausible mechanism to support a causal relationship. He explained that otitis media is capable of causing permanent damage, but in this case, the absence of documentation of tympanic membrane perforation or drainage or of evidence of treatment failure, make it less likely than not that the otitis media contributed to the Veteran's hearing loss. With regards to the Veteran's tinnitus, the examiner related that tinnitus is purely a symptom unlike hearing loss which may not constitute a symptom in its milder phase. He indicated that the Veteran's service treatment records do not contain documentation of complaints or reports of tinnitus. He stated that any contention of tinnitus during service is not supported by the record. He noted that the Veteran's representative has argued that the Veteran was not asked about or evaluated for tinnitus during service and that a lack of complaints for tinnitus in service is irrelevant. The examiner expressed disagreement with the representative's argument and noted that the Veteran had multiple sick call visits for otitis, either externa or media, and he had ample opportunity to report having tinnitus. The examiner opined that the Veteran's tinnitus was not caused by his hearing loss. He explained that hearing loss does not cause tinnitus, but loss of hearing acuity can make tinnitus more noticeable. He also opined that it was entirely possible that the hearing loss and tinnitus shared an etiology. However, he stated that an etiology was not clear for this Veteran. Again, he stated that he did not believe that the record demonstrated harmful effects of noise exposure during service for this Veteran.

In considering the evidence of record under the laws and regulations as set forth above, the Board concludes that the Veteran is not entitled to service connection for bilateral hearing loss and tinnitus.

As shown above, the Veteran currently has hearing loss at a level that is considered disabling for VA purposes, and he has reported the presence of and has been diagnosed with tinnitus. Furthermore, he has alleged that he was exposed to significant noise from his service. His description of the noise exposure is consistent with the circumstances of his service. Therefore, the evidence satisfies two of the three elements needed for service connection for each disability. Thus, the remaining question is whether the Veteran's currently diagnosed bilateral hearing loss and tinnitus are related to service, and the Board will confine this analysis to a discussion of that evidence.

The Board notes that neither sensorineural hearing loss and tinnitus nor manifestations sufficient to identify either disease entity are shown during service. Rather, the hearing tests taken throughout active service were essentially normal, and the Veteran denied having any history of ear trouble during that time period. While the Veteran now states that his hearing loss and tinnitus began in service, the pertinent regulations require that manifestations are "noted" in the service records and that is not case in this instance. Therefore, while currently-diagnosed sensorineural hearing loss and tinnitus are chronic diseases under 38 C.F.R. § 3.309(a), no notations of the disease or any characteristic manifestations of sensorineural hearing loss or tinnitus were shown in the service records. As such, service connection under 38 C.F.R. § 3.303(b) is not warranted, and sensorineural hearing loss and tinnitus may not be presumed to have been incurred in service. 38 U.S.C. § 1101; 38 C.F.R. §§ 3.307, 3.309.

The Board does acknowledge the Veteran's statements that his hearing loss and tinnitus began in service. The Veteran is competent to report his experience and symptoms in service and thereafter. While lay persons are generally not competent to offer evidence which requires medical knowledge, they may provide competent testimony as to visible symptoms and manifestations of a disorder. Jones v. Brown, 7 Vet. App. 134, 137 (1994); Layno v. Brown, 6 Vet. App. 465, 469 (1994); Barr v. Nicholson, 21 Vet. App. 303 (2007); Buchanan v. Nicolson, 451 F.3d 1331 (Fed. Cir. 2006). A veteran can attest to factual matters of which he has or had first-hand knowledge, e.g., experiencing pain in service, reporting to sick call, being placed on limited duty, and undergoing physical therapy. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). 

The Federal Circuit has held that lay evidence is one type of evidence that must be considered, if submitted, when a veteran seeks disability benefits, and competent lay evidence can be sufficient in and of itself for proving the existence of a chronic disease. See Buchanan, 451 F.3d at 1335; 38 C.F.R. §§ 3.303(a), 3.307(b). The Board, however, retains the discretion to make credibility determinations and otherwise weigh the evidence submitted, including lay evidence. Buchanan, 451 F.3d at 1336. Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. See Layno v. Brown, 6 Vet. App. 465 (1994) (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted")); see also Barr v. Nicholson, 21 Vet. App. 303 (2007).

In this case, the Board finds that the Veteran is competent to state that he has had difficulty hearing and ringing in his ears since his military service. However, his allegations are inconsistent with the contemporaneous record. As previously discussed, there is no evidence of any complaints, treatment, or diagnosis in service, and he repeatedly denied having ear trouble or hearing loss during service. Moreover, upon objective testing at separation in August 1975, his hearing was documented as being normal. As such, there is actually affirmative evidence showing that he did not have hearing loss or tinnitus in service or shortly thereafter. The Board finds that this affirmative evidence, including objective testing, outweighs the Veteran's more recent assertions of an onset since service, which were made in connection with a claim for compensation. Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991).

In addition, the Veteran has made inconsistent statements regarding the onset and history of his hearing loss and tinnitus. For example, the Veteran testified in March 2016 that the disorders began in service, yet he had previously told the July 2011 VA examiner that they had had a gradual onset. 

For these reasons, the Board finds that the reported onset and history are not reliable or credible. Therefore, the Board concludes that the Veteran's hearing loss and tinnitus did not manifest in service or for many years thereafter.

Nevertheless, the Board notes that the absence of in-service evidence of a hearing disability (i.e., one meeting the requirements of 38 C.F.R. § 3.385) is not always fatal to a service connection claim. See Ledford v. Derwinski, 3 Vet. App. 87, 89 (1992). Evidence of a current hearing loss disability and a medically sound basis for attributing that disability to service may serve as a basis for a grant of service connection for hearing loss where there is credible evidence of acoustic trauma due to significant noise exposure in service, post-service audiometric findings meeting the regulatory requirements for hearing loss disability for VA purposes, and a medically sound basis upon which to attribute the post-service findings to the injury in service (as opposed to intercurrent causes). See Hensley v. Brown, 5 Vet. App. 155, 159 (1993). 

As noted above, the Veteran has argued that he was exposed to noise exposure in service which caused his bilateral hearing loss and tinnitus. The Veteran is considered competent to relate a history of noise exposure during service. In addition, the post-service medical records show that the Veteran has current bilateral hearing loss by VA standards, as well as tinnitus. See 38 C.F.R. § 3.385. Thus, the remaining question is whether the Veteran's current bilateral hearing loss and tinnitus are related to his military service and/or his service-connected otitis externa.

For the reasons discussed below, the Board finds that the VA examiners' opinions are the most probative of record. Because they weigh against the Veteran's claims for service connection for bilateral hearing loss and tinnitus, the claims must be denied.

It is the responsibility of the Board to assess the credibility and weight to be given the evidence. See Hayes v. Brown, 5 Vet. App. 60, 69-70 (1993) (citing Wood v. Derwinski, 1 Vet. App. 190, 192-93 (1992)). The probative value of medical evidence is based on the provider's knowledge and skill in analyzing the data, and the medical conclusion the provider reaches; as is true of any evidence, the credibility and weight to be attached to medical opinions are within the province of the Board. See Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993).

The Board finds that the July 2011, August 2013, and September 2017 VA examiners' opinions are adequate and the most probative evidence of record on this matter. The examiners reviewed and detailed the relevant evidence in the claims file. They concluded that the Veteran's current hearing loss and tinnitus were not causally or etiologically related to his military service, including noise exposure and ear infections therein. In addition, they concluded that the Veteran's hearing loss and tinnitus were not caused or aggravated by his service-connected otitis externa.

The Board does acknowledge that laypersons are sometimes competent to provide opinions regarding such medical matters as diagnosis and etiology. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). However, the VA medical opinions outweigh the general assertions of the Veteran. In this regard, the Board notes that the VA examiners have training, knowledge, and expertise. They reviewed the evidence of record, including the Veteran's own lay statements, and relied on their expertise in rendering her opinion supported by rationale. Therefore, the Board finds that the VA opinions are more probative than the Veteran's lay statements.

Thus, the most persuasive opinion on the question of whether there is a nexus between the Veteran's current bilateral hearing loss and tinnitus and his military service and/or his service-connected otitis externa is that provided by the VA examiners in July 2011, August 2013, and September 2017, which weigh against the claims.

Based on the foregoing, the Board finds that the Veteran's bilateral hearing loss and tinnitus are not causally or etiologically related to his military service, to include the noise exposure therein. In addition, the Board finds that the Veteran's bilateral hearing loss and tinnitus were not caused or aggravated by a service-connected disability. Accordingly, the claims for service connection for bilateral hearing loss and tinnitus must be denied. 

In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, on these facts, that doctrine is not applicable. See 38 U.S.C. § 












ORDER

Service connection for bilateral hearing loss is denied.

Service connection for tinnitus is denied.




____________________________________________
J.W. ZISSIMOS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs